**CITY OF ARLINGTON, Petitioner,**

v.

**STATE FARM LLOYDS, Respondent.**

No. 03–0466.

Supreme Court of Texas.

Sept. 3, 2004.

Frank Waite, Elizabeth Lutton, Asst. City Attys., Alan Dean Lathrom, Arlington, for Petitioner.

Michael W. Minton, Law Office of Michael W. Minton, PLLC, Dallas, for Respondent.

PER CURIAM.

State Farm Lloyds (State Farm) brought a subrogation suit against the City of Arlington to recover monies it paid to an insured homeowner whose home was damaged by a sewage backup. The trial court awarded damages to State Farm, and the court of appeals affirmed. Initially, we must determine whether the City adequately preserved its argument that there was no evidence to support essential elements of State Farm's nuisance and takings claims. Because we conclude that the City adequately supported its arguments in the court of appeals with record references and citation of authority, we hold that it preserved the argument. Based on this Court's decision in *City of Dallas v. Jennings*, 142 S.W.3d 310 (Tex.2004), we further conclude that the City of Arlington is not liable, as a matter of law, for the damages alleged in the underlying case. We therefore reverse the court of appeals' judgment and render judgment in favor of the City of Arlington.

Raw sewage backed up into the home of Michael and Sonia Bates on two occasions in 1997 and 1998, causing significant damage to their home. The Bateses' homeowners' insurer, State Farm, paid them $12,723.61 for the first occurrence and $85,582.96 for the second. State Farm brought a subrogation suit against the City of Arlington to recover the monies paid, alleging that the City's operation of the sewer lines constituted a nuisance and an unconstitutional taking under Article 1, Section 17 of the Texas Constitution. State Farm did not allege that the City operated the sewer improperly; instead, it argued that "backups of raw, noxious sewage into private residences" are "inherent in the nature" of sewer systems. State Farm argued that the City should be liable for the damage caused by the sewer system because "the City intentionally acted to maintain the system for the benefit [o]f its citizenry, knowing all the time that backups such as the one involved here are inherent" in the operation of sewer systems.

At trial, a jury found that the sewer system "create[d] a nuisance" that proximately caused damages to the house, and that the second sewage flood (but not the first) constituted "a taking of property by the City of Arlington." The jury found that $42,916 would reasonably compensate the Bateses for the damage to their home from the second backup, and the trial court rendered judgment for that amount.

The City of Arlington appealed, arguing (1) that the City was immune from nuisance liability unless the nuisance amounted to a taking under Article I, Section 17 of the Texas Constitution; (2) that State Farm had put forward no evidence that the City acted with the requisite intent to support a takings claim under Article I, Section 17; (3) that State Farm had put forward no evidence that "the property [was] taken for, or applied to, a public use"; and (4) that the trial court erred by submitting questions of law to the jury.

Without considering the merits of the City's arguments, the court of appeals held that the City waived its issues by inadequate briefing because it failed to include specific citations to the record. 141 S.W.3d 216.

■ We disagree that the City waived its issues. Contrary to the court of appeals' statements, the City did include record references with page numbers in its brief's Statement of Facts section to support each fact it asserted. Although it did not repeat the references under its Argument and Authorities section, we have held that "failure to restate the facts and record references under each point of error" will not waive the issues when the brief "contains all points of error relied upon, argument and authorities under each point of error, and all facts relied upon for the appeal with references to the pages in the record where those facts can be found." *Weaver v. Southwest Nat'l Bank,* 813

S.W.2d 481, 482 (Tex.1991). Because the City's brief met the requirements laid out in *Weaver,* we conclude that the City did not waive its issues by failing to restate the record references in its Argument and Authorities section.

■ Nor do we agree that the City's citations to the "entire record" waived its no-evidence issues. For example, to support its assertion that "[t]here is no allegation or evidence that the [Bateses'] home was singled out or chosen by the City to facilitate an intentional sewage discharge," the City cited the "entire record." The court of appeals concluded that the City had waived its no-evidence points because it "failed to establish, with proper record references, what the evidence adduced at trial was and how that evidence supports its contentions on appeal" and concluded that "[m]erely asserting that no evidence supports the complained-of judgment will not suffice. . . . This court is not required to search a voluminous record, with no guidance from the City, to determine whether the record supports the City's contentions on appeal." 141 S.W.3d 216, 218. We disagree.

■ If the City's no-evidence argument had been based on the strength of the evidence—for example, if the City argued that the evidence was "so weak as to do no more than create a mere surmise or suspicion"—then the City could, and should, detail the relevant parts of the record. *See* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 363 (1960). In this case, however, the City was not arguing about the strength of the evidence, but was instead arguing that there was a complete absence of evidence on critical elements of State Farm's claims. When a complete absence of evidence is alleged, the reviewing court must include the entire

record within its scope of review. *See, e.g., Ford Motor Co. v. Miles,* 967 S.W.2d 377, 380 (Tex.1998) (noting that a no-evidence point will fail if there is "any probative evidence in the entire record.").

Furthermore, neither the facts nor the evidence were truly disputed in this case; instead, the parties essentially disagreed on the legal standards that should be applied to takings and governmental nuisance claims generally. For example, the parties in this case did not dispute whether there was evidence that the City intended to damage the Bateses' home; in fact, State Farm's attorney admitted during his closing argument that the City did not intend to damage the home. Instead, the parties disputed the appropriate legal standard by which to measure the intent required to support takings claims, with State Farm arguing that liability could be predicated on the fact that the City "intentionally operated the sewer system," and the City arguing that a heightened standard of intent should apply. Similarly, the parties did not truly dispute whether there was any evidence that the City's immunity had been waived; instead, they disputed whether, as a matter of law, the City could be held liable for a nuisance even in the absence of any waiver of immunity. Consequently, the crux of the dispute was whether State Farm's claims were barred as a matter of law, and whether the trial court should therefore have granted summary judgment in the City's favor. Both parties amply supported their legal arguments with citation to relevant authority. We conclude that these issues were not waived.

■ Because we determine that the issues were not waived, we turn to the merits of the City's appeal. Our recent opinion in *City of Dallas v. Jennings,* 142 S.W.3d 310 (Tex.2004), similarly dealt with a takings claim and a nuisance claim aris-

ing from a sewage backup and laid out the applicable legal standards for those claims. In that case, we held that a heightened intent standard is indeed necessary to support a takings claim, and that the mere intentional operation of a sewer system is insufficient to support liability. Specifically, we held that takings liability may arise when the governmental entity "(1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action." *Jennings,* 142 S.W.3d at 314.

In this case, there was no evidence the City possessed such knowledge; in fact, State Farm's own witnesses agreed that, at most, after "an occurrence at a certain place" there "may be a way to collect enough information to maybe predict that it's going to happen," but State Farm never alleged that such a prediction was possible in this case. Based on this record, we hold that the City did not engage in an unconstitutional taking.

■ Our decision in *Jennings* similarly forecloses State Farm's nuisance claim. In *Jennings,* we noted that "[a] city is immune from liability for its governmental actions unless that immunity is waived," and that "[o]peration of a sewer system is a governmental function." *Id.* (citing Tex. Civ. Prac. & Rem.Code § 101.0215(a)(32)). We therefore concluded that "the City will not be liable for damage resulting from its operation of the sewer system without a clear waiver of governmental immunity." *Id.* We apply the same standard here, and note that State Farm has not pointed to any applicable waiver of immunity. We therefore hold that the City of Arlington retained immunity from the nuisance claim.

For the foregoing reasons, we hold that the court of appeals erred in affirming the trial court's judgment. Pursuant to Rule

59.1 of the Texas Rules of Appellate Procedure, we grant the City's Petition for Review, and, without oral argument, render judgment that State Farm take nothing.