COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE CITY OF EL PASO, | § | |
| Appellant, | § | |
| v. | § | No. 08-10-00174-CV |
| GUADALUPE RAMIREZ, NORMA RAMIREZ, RAMIREZ PECAN FARMS, L.L.C, WILLIAM H BOUTWELL, JACKIE BOUTWELL, RAUL ZAMORANO, JR., AMY K. ZAMORANO, GEORGE WYNN, PATRICIA WYNN, LARRY R. WEBB, MARIA L. WEBB, JAMES R. RALEY, YARIELA G. RALEY, RUSSELL T. STURGEON, KERRY L. STURGEON, KENNETH A. JOHNSON, AND JULIE R. JOHNSON, | § § § § § § § | Appeal from the County Court at Law No. 5 of El Paso County, Texas (TC# 2007-2568) |
| Appellees. | § § | |

**O P I N I O N**

This is an interlocutory appeal where the City of El Paso challenges the trial court's partial denial of its plea to the jurisdiction, and contends the underlying case should be dismissed in its entirety under the doctrine of sovereign immunity.

Appellees are property owners who reside and operate agricultural businesses located within one mile of the southwestern boundary of the Clint Landfill.[1] The City of El Paso ("the City") has operated the Clint Landfill as a solid waste disposal site since it purchased the facility in the early 1980's. The land between the landfill and the properties at issue consist primarily of

---

[1] For ease of reference, we will refer to the Appellees as "Appellees" or as "the property owners" throughout this opinion.

unimproved, open desert. Running through the open desert to the landfill's southwestern boarder, and leading to the Appellees' properties, are natural drainage ways – arroyos – which have been designated by FEMA as arroyos Nine, Ten, and Eleven.

In late July and early August 2006, the City experienced a series of extraordinary rainstorms, resulting in extensive flooding in the City and surrounding areas. The landfill's retention ponds overflowed causing huge amounts of water, silt, trash, and other waste to flow down through the arroyos and onto Appellees' properties destroying structures and ruining crops. Appellees filed suit against the City in June 2007, raising claims for inverse condemnation, nuisance, trespass, violations of the Texas Water Code, and seeking a permanent injunction. Each property owner alleged that the flooding caused one million dollars in property damages, including past and future repair and restoration costs, loss of fair market value, lost profits, mental anguish, and in some cases, pain and suffering.

The City filed a plea to the jurisdiction contending that the Appellees' pleadings failed to state fact sufficient to support their inverse condemnation and related claims, and that the property owners failed to identify an applicable waiver of sovereign immunity. The trial court granted the City's plea with regard to the Appellees' claim that the City violated the Texas Water Code, and denied the plea as to all other causes of action. On interlocutory appeal, the City raises three issues raising general challenges the trial court's ruling. *See* TEX.CIV.PRAC.& REM.CODE ANN. § 51.014(b)(West 2008). In Issue One, the City addresses the property owners' claim for inverse condemnation, and presents basis for its argument that the Appellees failed to plead sufficient facts to support the cause of action. In Issue Two, the City contends that the property owners failed to plead a valid nuisance claim. In Issue Three, the City argues that the

property owners' claims for damages, including their request for injunctive relief, are barred by sovereign immunity.

To proceed with a suit against a governmental unit, such as the City of El Paso, a party must establish that the Legislature has consented to the suit. *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 101.001(3)(A) & (B), 101.025(West 2011); *Texas Dep't of Trans. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Absent such consent, sovereign immunity deprives the court of subject-matter jurisdiction over the case. *Jones*, 8 S.W.3d at 638. A plea to the jurisdiction is a dilatory plea which may be used to challenge the court's subject-matter jurisdiction. *Id*. Whether a court has subject-matter jurisdiction is a question of law, subject to *de novo* review. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

The scope of review regarding a plea to the jurisdiction is dependant on the particular challenge asserted in the plea, and the presence or lack of disputed jurisdictional facts. *See Miranda*, 133 S.W.3d at 226-27. When a plea challenges the sufficiency of the pleadings, the reviewing court must determine whether the pleader alleged facts that affirmatively demonstrate the court's jurisdiction over the case. *Id*. at 226. We will construe the pleadings in favor of the non-movant, and look to the pleader's intent. *Id*. If the pleadings do not allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but also fall short of demonstrating incurable defects, the proper remedy is to allow the pleader an opportunity to amend. *Miranda*, 133 S.W.3d at 226-27.

In the case of a plea challenging the existence of jurisdictional facts, our review will include relevant evidence to the extent necessary to resolve the jurisdictional question. *Id*. at 227. If the relevant evidence raises at least a fact question regarding the jurisdictional issue, then

the plea must be denied, and the fact issue left for determination by the fact finder. *Id*. at 227-28. If the relevant evidence is undisputed, or fails to raise a fact issue, the proper action is to rule on the plea as a matter of law. *Id*. at 228. In such a review, all evidence favorable to the non-movant will be taken as true, and we will indulge every reasonable inference in favor of the non-movant. *Id*.

In the case before us, the City's plea challenged the sufficiency of the property owner's pleadings. First, the City asserted that the property owners failed to plead any claim that demonstrates a waiver of immunity for tort liability pursuant to the Texas Tort Claims Act. Second, the City argued that the property owners failed to plead a valid claim for inverse condemnation, by pleading only allegations of inaction or negligence. Finally, regarding the property owners' nuisance and trespass claims, the City also asserted that the pleadings were incurably defective because the factual allegations raised in the petition are limited to negligence, and fail to rise to the level of an intentional tort. Because the City's plea presented a challenge to the sufficiency of the pleadings, we will focus our review on the property owners' Third Amended Petition, the live pleading at the time of the trial court's ruling. *See Miranda*, 133 S.W.3d at 226-27.

Following an extensive recitation facts regarding the 2006 flood, the history of the landfill and its operation, and the damage done to each individual's property, the following allegations are included under the heading, "CAUSES OF ACTION."

> 42.    The allegations in the Statement of Facts are incorporated herein. The
>        City of El Paso has taken, damaged, or destroyed the Plaintiff's properties
>        and thereby inversely condemned then in violation of Article I, Section 17
>        of the Texas Constitution by its construction of the Clint Landfill or its
>        subsequent operation and maintenance. The City of El Paso has, on a re-

-4-

occurring basis, caused damages to the Plaintiff's properties in order to benefit the public who use and benefit from the landfill. The City of El Paso knows that its specific acts were causing identifiable harm to the Plaintiffs or the City of El Paso knows that the specific Plaintiffs' property damages are substantially certain to result from authorized City of El Paso actions- that is, the Plaintiff's damages are necessarily an incident to, or necessarily a consequential result of the City of El Paso's actions. The landfill is a large, less-permeable structure placed over desert and arroyos, uphill from the Plaintiff's properties. The landfill increases the runoff from the lands it is built upon. It increases the silt and trash that comes with those waters. The City of El Paso did not even abide by its own permit for the landfill. It did not build and maintain protective or sufficiently protective berms on top. It did not line its drainage channels. The City of El Paso knew there was the potential for substantial runoff and erosion from the landfill. In fact the law of Texas does not permit the City of El Paso to allow its solid waste from the landfill to escape into downstream arroyos and onto Plaintiffs' properties. The City of El Paso knows it is to build drainage channels and detention ponds for this older site to handle at least a 24 hour- 25 year storm and to contain and control the runoff. Newer regulations call for the landfill to handle a 100 year storm. Ignoring newer regulations, the City contends it can do nothing because the older site is grand-fathered in. The City of El Paso did not properly prevent erosions from the landfill. It did not maintain a run-off management system that would collect and control at least the water volume from a 24 hour-25 year storm. The erosion and surging rainwater runoff has damaged Plaintiffs' properties on a reoccurring basis. The City of El Paso has received several citations of violations and warnings by the Texas Commission of Environmental Quality and, in each instance, its intentionally limited remedial measures did not prevent a reoccurrence. The City of El Paso intentionally did not put in linings to protect against erosion or sufficient pumping capacity to drain the detention ponds in a timely manner. No overflow protections were taken, leading to failures of the detention ponds. The City ignored its own expert report, all TCEQ warnings and the lessons revealed by the re-occurrences. It subjected Plaintiffs to the risks.

43.     The City has created and is continuing an intentional nuisance that is a proximate cause of damages to Plaintiffs. The intentional nuisance allows Plaintiffs to also recover from the City under Article I, Section 17 of the Constitution. The allegations in the Statement of Facts and paragraph 42 are incorporated herein.

44.     The City has created and is continuing a trespass against Plaintiffs that is

[an] approximate cause of damages to them. The trespass allows Plaintiffs to recover from the City under Article I, Section 17 of the Texas Constitution. The allegations in the Statement of Facts and paragraph 42 are incorporated herein.

.    .    .

47.    The Plaintiffs seek a permanent injunction requiring the City to abate the nuisance and trespass, to permanently fix the Clint Landfill so that it does not have ponds that fail, so that it does not divert and concentrate surging surface waters onto or near Plaintiffs' properties, and so that it does not erode and release trash and mud and toxic materials on or near Plaintiffs' properties.

In Issue One, the City addresses the trial court's ruling regarding the Appellees' inverse condemnation claim and the related claims for nuisance and trespass. The City argues primarily, that the Appellees failed to state a claim for inverse condemnation because the allegations are insufficient to support the intent element of the cause of action as a matter of law.

The Texas Constitution prohibits the State from taking, damaging, or destroying an individual's property, for public use, without adequate compensation. *See* TEX.CONST. art. I, § 17. Condemnation of property by the State, occurs when the government exercises its right to take private property for public use, but implies that the State has properly compensated the property owner for the taking. *See City of Houson v. Boyle*, 148 S.W.3d 171, 178 (Tex.App.-- Houston [1st Dist.] 2004, no pet.). Inverse condemnation, on the other hand, occurs when the government takes property without compensation, and the property owner seeks to recover the resulting damages. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). To establish a claim for inverse condemnation, the property owner must prove: (1) the State acted intentionally in the exercise of its lawful authority; (2) the act resulted in the taking, damaging, or destroying of property; (3) for public use. *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d

591, 598 (Tex. 2001).

In this instance, the City's plea was focused in large part in the sufficiency of the property owners' pleadings regarding the intent element. In *City of Dallas v. Jennings*, the Texas Supreme Court held that a governmental entity's liability for a taking through physical damage to property if the entity:

(1)    knows that a specific act is causing identifiable harm; or

(2)    knows that the specific property damage is substantially certain to result from an authorized government action -- that is, that the damage is necessarily an incident to, or necessarily a consequential result of the government's action. [Internal quotations omitted].

142 S.W.3d 310, 314 (Tex. 2004).

Intent, even in these terms, however is not sufficient as it fails to account for the State's general immunity from liability for negligence, and risks public payment for damage for which the public received no benefit. *See Tarrant Reg. Water Dist. v. Gragg*, 151 S.W.3d 546, 554-55 (Tex. 2004). As the Court has explained, "[public use] is the factor which distinguishes a negligence action from one under the constitution for destruction." *Gragg*, 151 S.W.3d at 555. It follows that a governmental entity's alleged failure to act cannot rise to the level of a taking. *AN Collision Cent. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 196 (Tex.App.--Dallas 2010, no pet). A governmental entity's failure to act, even in the face of evidence that curative measures are necessary to prevent future damage, rise only to the level of a negligence claim, and acts of mere negligence will not support a taking claim. *See AN Collision Cent. of Addison, Inc.*, 310 S.W.3d at 196, *citing Gragg*, 151 S.W.3d at 554, *Jennings*, 142 S.W.3d at 313, *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997); *see also City of Anson v. Harper*, 216 S.W.3d 384,

393 (Tex.App.--Eastland 2006, no pet)(holding pleadings were sufficient to support a takings claim for city's actual development of property as landfill, but limiting such a claim to "actions physically taken on the property . . . .").

The pleadings in the case before us allege property damage due to numerous omissions by the City. Even construed liberally and in the Appellees' favor, allegations that the City was aware of the potential for overflow from the landfill's retention ponds, and its subsequent failure to take measures to prevent such overflow, fail to rise to the level of a claim for inverse condemnation. *See Gragg*, 151 S.W.3d at 554, *Jennings*, 142 S.W.3d at 313. Issue One is sustained.

As the remainder of Appellees' surviving claims were also asserted pursuant to Article I, Section 17, they are similarly barred by sovereign immunity. Accordingly, we sustain Issues Two and Three.

The only question remaining is whether the Appellees' pleadings demonstrate an incurable defect, or whether they should be given the opportunity to amend their pleadings. *See Miranda*, 133 S.W.3d at 226-27. Based on the arguments presented, there is no indication that the defects discussed above are incurable. *See id*. As such, we will remand the case to the trial court so the Appellees' may have the opportunity to amend their pleadings. *See id*.

Having sustained Appellant's issues, we reverse the trial court's order denying the plea to the jurisdiction. The case will be remanded for proceedings consistent with this opinion.

August 24, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.