

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE CITY OF EL PASO, | § | |
| | | No. 08-12-00309-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law No. 5 |
| GUADALUPE RAMIREZ, NORMA | § | |
| RAMIREZ, RAMIREZ PECAN FARMS, | | of El Paso County, Texas |
| LLC, WILLIAM H. BOUTWELL, | § | |
| JACKIE BOUTWELL, RAUL | | (TC#2007-2568) |
| ZAMORANO, JR., AMY K. | | |
| ZAMORANO, GEORGE WYNN, | § | |
| PATRICIA WYNN, LARRY R. WEBB, | | |
| MARIA L. WEBB, JAMES R. RALEY, | § | |
| YARIELA G. RALEY, RUSSELL T. | | |
| STURGEON, KERRY L. STURGEON, | § | |
| KENNETH A. JOHNSON, AND JULIE | | |
| R. JOHNSON, | § | |
| | | |
| Appellees. | § | |

## **O P I N I O N**

Appellant, the City of El Paso ("the City"), brings this accelerated interlocutory appeal following the trial court's denial of its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2008); TEX.R.APP.P. 28.1(a) (stating an appeal from an interlocutory order, when allowed, is accelerated). The City raises three issues for our review.

We affirm.

## BACKGROUND

This is the second time this case has been before us on the City's plea to the jurisdiction. *See City of El Paso v. Ramirez*, 349 S.W.3d 181, 183 (Tex.App. – El Paso 2011, no pet.) ("*Ramirez I*"). As set forth in *Ramirez I*, the following are the underlying facts. The City has owned and operated the Clint Landfill, a solid waste disposal site, since the early 1980's. Appellees own land within one mile of the landfill's southwestern boundary. In July 2006, after a series of rainstorms, the City and surrounding areas experienced extensive flooding. As a result of the heavy rainfall, the retention ponds at the Clint Landfill overflowed and caused significant damage to Appellees' property.

In June 2007, Appellees sued the City asserting claims for inverse condemnation, nuisance, trespass, Texas Water Code violations, and requesting a permanent injunction. The City filed its first plea to the jurisdiction challenging the sufficiency of Appellees' pleadings. When the trial court granted the City's plea as to Appellees' Water Code violation claims, and denied the plea as to all the other claims, the City filed its first interlocutory appeal.

In *Ramirez I*, this Court reversed the trial court's partial denial of the City's plea to the jurisdiction. *Ramirez*, 349 S.W.3d at 187. We determined that Appellees' pleadings alleged property damage due to omissions by the City, and even when construed liberally their pleadings failed to rise to the level of an inverse condemnation claim. *Id.* We further concluded Appellees' remaining claims were barred by sovereign immunity because those claims were brought under Article I, Section 17 of the Texas Constitution. *Id.* However, because there was no indication that the defects in Appellees' pleadings were incurable, we remanded the case

2

to the trial court to allow Appellees the opportunity to amend their pleadings. *Id*.

On remand, after Appellees filed several amended petitions, the City filed its second plea to the jurisdiction. In response, Appellees filed their Eighth Amended Original Petition, the live pleading in this case. The City subsequently filed a reply and supplemented its plea. After a hearing, the trial court denied the City's plea to the jurisdiction. This appeal ensued.

## DISCUSSION

### *Standard of Review*

A plea to the jurisdiction is a dilatory plea which contests the trial court's authority to determine the subject matter jurisdiction of the cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A trial court's ruling on a plea to the jurisdiction is reviewed *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff has the burden of pleading facts which affirmatively show that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

When a plea to the jurisdiction challenges the sufficiency of the pleadings, we determine whether the plaintiff has met its burden by pleading facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226. In doing so, we construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id*. at 226, 228. If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded an opportunity to replead. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *Miranda*, 133 S.W.3d at 226-27. However, if the pleadings affirmatively negate the existence of the trial court's jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an

opportunity to amend. *Miranda*, 133 S.W.3d at 227.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence to resolve the jurisdictional issues presented, just as the trial court is required to do. *Miranda*, 133 S.W.3d at 227 (citing *Bland Independent School District*, 34 S.W.3d at 555). If the relevant evidence creates a fact question regarding the jurisdictional issue, the trial court must not grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Miranda*, 133 S.W.3d at 227-28. On the other hand, if the relevant evidence is undisputed or fails to raise a fact issue, the trial court must rule on the plea to the jurisdiction as a matter of law. *Id*. at 228; *City of El Paso v. Mazie's L.P.*, 408 S.W.3d 13, 18 (Tex.App. – El Paso 2012, pet. denied).

In the instant case, the City's plea to the jurisdiction challenged both the sufficiency of Appellees' pleadings and the existence of jurisdictional facts. On appeal, the City complains the trial court erred by denying its plea on both grounds. The City further requests that we dismiss Appellees' claims without further opportunity to amend their pleadings or alternatively, that we remand the case to the trial court with an instruction that the case be dismissed.

## INVERSE CONDEMNATION

## SUFFICIENCY OF THE PLEADINGS

In Issue One, the City argues the trial court erred by denying its plea to the jurisdiction because Appellees' pleadings failed to demonstrate the intent and public use elements of an inverse condemnation claim. The City also contends Appellees' pleadings failed to establish causation. The City maintains that because Appellees did not plead a valid takings claim those claims are barred by sovereign immunity. The City further argues Appellees' nuisance and trespass claims which were asserted under Article I, Section 17 of the Texas Constitution are also

4

barred by the City's governmental immunity. Appellees respond that they have pleaded sufficient facts to support their claims. We agree with Appellees.

The Texas Constitution prohibits the State from taking, damaging, or destroying an individual's property, for public use, without adequate compensation. *See* TEX. CONST. art. I, § 17. To establish a takings claim, Appellees must show: (1) an intentional governmental act by the City; (2) that resulted in the taking, damaging, or destroying of Appellees' property; (3) for public use. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *Park v. City of San Antonio*, 230 S.W.3d 860, 867 (Tex.App. – El Paso 2007, pet. denied). A person's property may be taken, damaged, or destroyed if an injury results from either the construction of public works or their subsequent maintenance and operation. *City of Tyler v. Likes*, 962 S.W.2d 489, 504-05 (Tex. 1997).

### Intent

First, the City argues that Appellees' pleadings are insufficient because Appellees failed to allege facts showing that the discharge of water from the Clint Landfill was the result of an intentional act. Specifically, the City contends Appellees' allegations continue to merely allege claims of negligence and not a valid takings claim. For purposes of Article I, Section 17, the Texas Supreme Court has explained that a governmental entity acts intentionally if it (1) knows that the specific act is causing identifiable harm, or (2) knows that the specific harm is substantially certain to result from authorized government action—that is, that the harm is necessarily incident to, or necessarily a consequential result of the government's actions. *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). However, mere negligence that eventually contributes to the destruction of property is not a taking. *Likes*, 962 S.W.2d at 505;

5

*see Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004) (explaining that intent is the factor which distinguishes a takings claim from a negligence claim).

In their Eighth Amended Original Petition, Appellees set forth a detailed fact section describing the history of the Clint Landfill's construction and operation, the 2006 rainstorm and flood, the damage to Appellees' properties, the 2002 and 2004 rainstorms and related events. Appellees alleged that the City owns and operates the Clint Landfill for the benefit of the public and constructed cells at the landfill in the early 1980's, 1999, and 2001. The following facts were also pleaded:

> 20. The 2006 flooding was only the most recent of at least three similar incidents over a four-year period in which the water-retention ponds filled with silt and debris, then flooded nearby properties.
>
> …
>
> 22. The 2002 storm washed a torrent of mud, water, and trash onto nearby properties, including some owned by the Plaintiffs…. In July 2002, the City asked George Wynn for a Right of Entry to permit removal of any debris on his property that had migrated there from Clint Landfill due to the recent rains. As a result of its 2002 investigation, [the Texas Commission on Environmental Quality] concluded that the City had failed "to maintain a run-off management system from the active portion of the landfill to collect at least the water volume resulting from a 24 hour-25 year storm."
>
> 23. The second flooding incident occurred just two years later, in September 2004, resulting in another Commission report by Mr. Rimkus. According to that report, waste again had "washed out of the [Clint Landfill] during a storm event and been carried down arroyos south of the landfill." Again, the landfill, its slopes, and the water-retention ponds were to blame.
>
> In its report, the Commission stressed its concerns about the continuing efficacy of the landfill and its water-retention ponds, now twice to blame for flooding of nearby properties….
>
> Some of the Plaintiffs experienced runoff from the landfill during the 2004 storm, and particularly noticed an offensive odor.

24.   Around this time, several of the Plaintiffs went before representatives of the Clint Landfill, the City, [the Texas Commission on Environmental Quality], the Texas General Land Office, the U.S. Army Corps of Engineers, and the Rio Grande Council of Governments to discuss what could be done to protect them from the recurrent flooding of water, mud, and trash from the Clint Landfill. But nothing came of those attempts. The general consensus of the governmental representatives involved in the meeting was the flooding was inevitable due to the location and structure of the landfill.

25.   By the end of 2005, then, the City knew that the water-retention ponds had overflowed at least twice in the preceding three years and flooded nearby properties with water, mud, trash, and toxic waste. Indeed, the City had been informed multiple times by area landowners of the damage. Yet the City continued to operate and maintain the Clint Landfill, piling trash and other materials on it regularly—essentially constructing the landfill on daily basis. After all, the whole purpose of a landfill is to dispose of refuse. By depositing (or permitting the deposit of) trash and other materials onto the Clint Landfill, the City was continually constructing—or at a minimum changing the character of—the Clint Landfill's composition.

…

27.   On July 28, the Clint Landfill once again impounded, concentrated, and diverted the rainfall surface waters onto adjoining lower properties—just as it had twice in the preceding four years. The huge runoff from the landfill's surface again caused the sandy slopes to erode. One or more of the southwestern water-retention ponds failed, resulting in an enormous surge of water, silt, and trash that rushed down arroyos nine, ten, and eleven below the landfill. The Clint Landfill itself was breached, causing trash and toxic materials to escape and flow rapidly with the waters onto or near Plaintiffs' properties, which were inundated with trash, toxic debris, and water—damaging property, killing vegetation and livestock, and even destroying access roads to some of the properties.

Under the "CAUSES OF ACTION" section of their petition, Appellees alleged:

40.   Constitutional Taking/Inverse Condemnation.   The allegations in the Statement of Facts are incorporated herein. [The City] has taken, damaged, or destroyed the Plaintiffs' properties and thereby inversely condemned them in violation of Article I, Section 17 of the Texas Constitution and the Fifth Amendment to the United States Constitution by the construction, operation, or maintenance of the Clint Landfill. Absent the City's continued operation of the Clint Landfill—including the continued deposit of solid waste and other refuse—the damages would not have occurred.

41. The City knew its construction, operation, and maintenance of the Clint Landfill was substantially certain to damage the Plaintiffs' properties by continuing to flood them during heavy rain events. The City knew that damage was necessarily a consequential action of its construction, operation, and maintenance of the landfill. Indeed, the City knew that its construction, operation, and maintenance of the landfill had already caused identifiable damage to certain of the Plaintiffs' properties. Despite this knowledge, the City continued to operate and maintain the Clint Landfill.

42. The Clint Landfill's operation and maintenance changed the character of that flooding, causing an increased flow of water across the Plaintiffs' properties. The water arrived sooner, flowed faster, and was more forceful and longer-lasting. It was infused with trash and toxic waste, transforming it into leachate rather than rainwater. Neither the flooding nor the damage was temporary; indeed, it was a permanent condition so long as the City continued operation of the Clint Landfill as it did. The inevitable flooding would not have occurred absent the City's continued intentional acts.

43. The Clint Landfill was constructed, and is operated, for the benefit of the public. The damages to the Plaintiffs' properties arose from and were incident to the City's operation of this public works facility. This recurrence establishes that the benefit to the public was neither temporal nor speculative; to the contrary, it was inevitable in the operation of the landfill as intended. Moreover, the damage was the result of the City's policy calculus; the City knew its actions would necessarily cause damage to certain private property, but apparently determined that the benefit to the public outweighed this harm. The damages were foreseeable to the City.

44. The flooding of Plaintiffs' properties was inevitably recurring due to the construction and operation of the Clint Landfill. Moreover, the flooding of and damage to Plaintiffs' properties was the direct and necessary result of operation of the Clint Landfill and was reasonably foreseeable by the City. Thus, the flooding and damage was foreseeably caused as a direct result of the City's authorized policy of operating the Clint Landfill. For all these reasons, and those expressed elsewhere in this petition, the City took the Plaintiffs' properties for public use without just compensation in violation of the Takings Clause of the United States Constitution, and this conduct constituted both a taking and a taking *per se….* Plaintiffs preserve their right to proceed with their federal takings claim in federal court by making this express reservation to disposition of the entire case by this court, or any state court.

45. Nuisance. The City has created and is continuing an intentional nuisance that is a proximate cause of damages to Plaintiffs. The intentional nuisance also allows Plaintiffs to recover from the City under Article 1, Section 17 of the Texas Constitution.

8

46.  Trespass.  The City has created and is continuing a trespass against Plaintiffs that is a proximate cause of damages to them.  The trespass allows Plaintiffs to recover from the City under Article 1, Section 17 of the Texas Constitution.

…

48.  Injunctive Relief.  The Plaintiffs seek a permanent injunction requiring the City to abate the nuisance and trespass; specifically to do whatever is required to prevent the Clint Landfill from gathering, diverting, concentrating, and releasing surface waters and other materials onto or near the Plaintiffs' properties.

The City asserts that when Appellees' factual allegations are construed in Appellees' favor they merely allege that the City was aware of the potential for overflow from the landfill's retention ponds, and the City failed to take preventative measures to prevent such overflow. However, we agree with Appellees that the City misconstrues their allegations as Appellees' live petition does not contain any allegations that the City was negligent.  Rather, Appellees alleged the City continued to operate and maintain the landfill with knowledge that nearby properties experienced floodwater damage at least twice during the preceding three years and that the City knew its construction, operation, and maintenance of the landfill was substantially certain to damage Appellees' properties as long as the City continued its intentional acts.

Next, the City contends Appellees' sole allegation of any intentional conduct is the City intended to operate and maintain the landfill, citing *City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 168 (Tex. 2004) (mere intentional operation of a sewer system is insufficient to support liability under Article I, Section 17).  However, this case, unlike *State Farm Lloyds*, involves an appeal from the denial of a plea to the jurisdiction and not a review of the sufficiency of the evidence after a jury trial.  *See State Farm Lloyds*, 145 S.W.3d at 166-68.  Moreover, unlike the appellees in *State Farm Lloyds*, Appellees did not allege that occasional flooding is

9

inherent in the nature of a landfill and thus, the City should bear the expense. *See id*. at 166. Instead, Appellees alleged the City operated and maintained the landfill by regularly piling trash and other materials onto the landfill, the City's operation and maintenance changed the character of the floodwater, and the City continued to operate and maintain the landfill knowing that its intentional action was substantially certain to damage Appellees' properties by continuing to flood them during heavy rain events. Therefore, we conclude *State Farm Lloyds* is distinguishable from the present case.

Lastly, the City asserts Appellees cannot make sufficient allegations of intent because the operation of a landfill is distinct from other types of public works where inverse condemnation has been found. Appellant then distinguishes between the operation of a landfill and the operation of a dam/reservoir system. The City maintains that because the release of water onto downstream properties is necessarily inherent in the operation of a reservoir system and not in the operation of a landfill, the City would not know that flooding is substantially certain to occur from its operation of a landfill because the City is under a duty not to release water from the landfill, and the landfill is designed to discharge water into the surrounding drainage system.

In reply, Appellees argue that we previously rejected a similar argument in *Mazie*. Appellees further contend the landfill's design and purpose are irrelevant where the City constructed, maintained, or operated the landfill knowing that identifiable damage to Appellees' properties was substantially certain to result. In *Mazie*, we rejected the argument that a takings claim based on the operation and maintenance of a public work requires a specific act such as the release of water from a control gate or the unclogging of a sewer line. *Mazie*, 408 S.W.3d at 20-21.

10

The City concedes that the operation of a landfill is a government function. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(6) (West 2005). We further note the City concedes it is not impossible for a landfill to commit a flood-related taking, but asserts an extraordinary set of circumstances must exist before a negligent release of water constitutes an intentional flooding of property. However, the City fails to provide us with further elaboration of what those extraordinary set of circumstances entail and asserts Appellees failed to plead sufficient allegations to identify such circumstances. Because Appellees did not allege that flooding is inherent in the nature of a landfill, but rather alleged that the City intentionally operated and maintained the Clint Landfill knowing that nearby properties were damaged at least twice during the preceding three years and that the City knew its construction, operation, and maintenance of the landfill was substantially certain to damage Appellees' properties as long as the City continued its intentional acts, in the instance case, we conclude that the distinction between the operation of a landfill and the operation of a dam/reservoir system is not relevant for purposes of establishing the requisite intent. *See Mazie*, 408 S.W.3d at 20-21 (rejecting argument that a takings claim based on the operation and maintenance of a public work requires a specific act such as the release of water from a control gate or the unclogging of a sewer line); *Jennings*, 142 S.W.3d at 314 (intent can be found when physical damage to property is substantially certain to occur from the operation of an authorized government act – that is, that the damage is necessarily an incident to, or a consequential result of the government's action).

### Mere Recitation of Facts or Sufficient Allegations of Facts?

The City attempts to analogize the allegations contained in the Eighth Amended Original Petition to the pleadings filed in *City of Dallas v. Blanton*, 200 S.W.3d 266, 273 (Tex.App. –

11

Dallas 2006, no pet.). In *Blanton*, the issue was whether there had been a physical or regulatory invasion of the property when the City of Dallas required the appellees pay to reroute the plumbing on their properties. *Blanton*, 200 S.W.3d at 272, 273. The issue did not concern whether the City of Dallas's conduct was intentional. *Id*. at 273.

The *Blanton* appellees argued their pleadings were sufficient to allege a takings claim because they tracked the language in *Jennings*. The *Blanton* court disagreed and stated: "[m]erely designing the pleadings to track language in *Jennings* does not satisfy the standards established by *Miranda* because we review the pleadings as well as the evidence submitted below on the plea to the jurisdiction." *Id*. In concluding that the evidence did not present a fact issue on physical taking, the *Blanton* court concluded there was no claimed damage other than the appellees having to pay to reroute the plumbing, and that the evidence did not show any physical invasion of the properties or that any physical harm was expected to occur in the future. *Id*. The *Blanton* court found *Jennings* did not contain language to support a claim for a physical invasion that had not yet taken place. *Id*.

Here, the City points to paragraphs 40 through 48 of Appellees' Eighth Amended Original Petition and maintains that Appellees merely recite the elements of inverse condemnation identified by the *Jennings* and *Gragg* courts. The City then argues Appellees failed to identify facts to support their legal conclusions that the City (1) knew that its maintenance of the retention ponds and sandy side slopes of the landfill resulted in identifiable harm to Appellees' properties; or (2) knew that the specific property damage (flooding of Appellees' properties) was substantially certain to result from an authorized government action. As such, the City asserts Appellees' allegations are insufficient to establish the City's intent to inversely condemn Appellees' property.

12

We disagree.

In determining whether a valid takings claim has been pleaded, our analysis is not restrained to a single paragraph in the petition. *Mazie*, 408 S.W.3d at 19. Through their Eighth Amended Original Petition, Appellees alleged that in 2002 and 2004, flooding from the landfill damaged nearby properties which included some of Appellees' properties, government reports indicated the landfill was the cause of the recurrent flooding, various parties including several Appellees and the City met to discuss how to protect Appellees from the recurrent flooding, and the general consensus of the government representatives was that the flooding was inevitable due to the location and structure of the landfill. More precisely, Appellees alleged that by the end of 2005, the City knew that overflowing of the water-retention ponds had occurred at least twice and flooded nearby properties. The City had been informed of the damage by area landowners and yet, the City continued to operate and maintain the Clint Landfill. Although Appellees' pleadings contain some of the language in *Jennings* and *Gragg*, we conclude Appellees alleged facts that go beyond the mere recitation of the elements of a claim for inverse condemnation. Accordingly, *Blanton* fails to support the City's argument.

### *Recurrence*

In an attempt to defeat Appellees' allegation that the recurrence of flooding on their property supports their intent allegation, the City contends that recurrence is not probative in this case. In the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity, and therefore substantially certain to occur. *Gragg*, 151 S.W.3d at 555. Although nonrecurrent flooding may cause damage, a single flood event generally does not rise to the level of a taking. *Id.* This

13

assures that the government will not be liable for the taking of property when a project's adverse impacts, and by implication its benefit to the public, are too temporal or speculative to warrant compensation. *Id*.

The City asserts that this case is factually distinguishable from *Gragg* because "the release of water from the Landfill is not necessarily incident to the design or operation of the Landfill *as intended* [emphasis in original]." In essence, the City is again arguing that because the release of water from a landfill is not an inherent part of its operation, it cannot establish the requisite intent to support an inverse condemnation claim. However, we need not address the City's argument as to whether recurrence is probative of the City's intent because we have previously held that recurrence goes to the merits of a takings claim and is not a pleading requirement to invoke the trial court's jurisdiction. *See Mazie*, 408 S.W.3d at 25.

## Public Use

Second, the City argues Appellees failed to invoke the trial court's jurisdiction because they failed to sufficiently plead that the City took (or in this case damaged) their property for a public use or benefit. Under Article I, Section 17, compensation is provided for only if property is damaged or appropriated for or applied to public use. *Gragg*, 151 S.W.3d at 554-55; *Mazie*, 408 S.W.3d at 24. The question of what constitutes public use is one for the court. *Dyer v. Tex. Elec. Serv. Co.*, 680 S.W.2d 883, 884 (Tex.App. – El Paso 1984, writ ref'd n.r.e.). In general, Texas courts have narrowed the meaning of a public use to those situations in which damages arise out of or are incident to public works. *Steele v. City of Houston*, 603 S.W.2d 786, 790 (Tex. 1980). Property is taken for a public use only when there results to the public some definite right or use in the undertaking to which the property is devoted. *Dyer*, 680

14

S.W.2d at 885.

To support its argument that Appellees fail to allege a public use, the City relies on *City of Borger v. Garcia*, 290 S.W.3d 325 (Tex.App. – Amarillo 2009, pet. denied). However, as correctly noted by Appellees, *Garcia* is distinguishable from the instant case.

In *Garcia*, the appellees sued the City of Borger after flooding due to heavy rainfall damaged their homes. *Garcia*, 290 S.W.3d at 328. To establish the public use element of their takings claim, the appellees alleged that: (1) the damage to their property arose out of or was incident to a public work; (2) the City of Borger utilized cheaper materials and inadequately planned its drainage system, which resulted in saving public funds; and (3) the design and installation of the drainage system protected other homeowners from the flooding suffered by the appellees.[1] *Id*. at 329. As to the appellees' first basis, the *Garcia* court generally agreed that damage arising out of or that is incident to public works meets the public use element of a takings claim. *Id*. at 330. However, the *Garcia* court determined that the appellees failed to plead sufficient facts establishing the property damage they suffered arose out of or was incident to a public work because the appellees failed to allege facts supporting their conclusion that the drainage system somehow exacerbated the flooding and failed to allege that the City of Borger's redesign and installation of the drainage system caused an increased flow of surface waters across their property. *Id*. As such, the *Garcia* court concluded the appellees failed to allege facts "creating a causal nexus between the property damage and the [City of Borger's] drainage system." *Id*.

As to the appellees' allegation regarding the City of Borger's use of less costly materials

---

[1] Because the third basis establishing public use in *Garcia* is not applicable to the present case, we do not discuss it further.

15

and failure to adequately plan the drainage system leading to a savings of public funds, the *Garcia* court concluded there was no evidence establishing that cheaper materials were used in the drainage system; and while it found some evidence of inadequate planning, it determined that the evidence, at best, presented a fact issue as to the City of Borger's negligence in designing the drainage system. *Id.* at 330-31. Even assuming that the savings of public funds was a public use, the *Garcia* court found there were no allegations or evidence in the record to show a causal connection between the alleged savings on the drainage system and the damage to the appellees' property. *Id.* at 331. Accordingly, the *Garcia* court found the purported savings of public funds in the design and the construction of the drainage system to be insufficient to show the appellees' property was taken for a public use. *Id.*

Based on the holding in *Garcia*, the City argues Appellees "have merely alleged that the maintenance and operation of the Landfill is part of the [City's] policy calculus (presumably to save money by not implementing repairs)," and that there are no allegations to establish a causal connection between the City's policy calculus and the damage to Appellees. Initially, we note that unlike *Garcia*, Appellees' pleadings did not allege that the City undertook any actions that resulted in the savings of public funds. Instead, Appellees alleged that the Clint Landfill was constructed and is operated for the benefit of the public. Similar to the allegations in *Garcia*, Appellees also alleged that the damage they suffered arose from and was incident to the City operation of a public works facility. However, unlike *Garcia*, Appellees' pleadings alleged that the character of the floodwaters was changed by the City's continued operation and maintenance of the landfill which included the act of regularly piling trash and other materials on the landfill.

Appellees further expressly alleged that the maintenance and operation of the landfill

caused an increased flow of water across their properties. According to Appellees, the water arrived sooner, flowed faster, was longer-lasting, and was infused with trash and toxic waste transforming it into leachate rather than rainwater. Moreover, Appellees alleged the damage to their properties was "the result of the City's policy calculus: the City knew its actions would necessarily cause damage to certain private property, but apparently determined that the benefit to the public outweighed this harm." Unlike the appellees in *Garcia*, Appellees in the instant case pleaded facts that could establish that the damage to their property arose out of or was incident to a public work. *Garcia*, 290 S.W.3d at 330.

The City cites to *City of San Antonio v. Pollock*, 284 S.W.3d 809, 820-21 (Tex. 2009) (stating that the public-use element distinguishes a negligence claim from an inverse condemnation claim), to argue that Appellees' true complaint is that the flooding from the landfill is the result of the City's insufficient maintenance or design of the water-retention ponds. In *Pollock*, plaintiffs sued the City of San Antonio for nuisance and negligence alleging property damages to their home when benzene from a closed landfill migrated through the soil to their home and personal injury to their daughter. *Id*. at 812, 815. The Texas Supreme Court rejected the plaintiffs' claim that the City of San Antonio "knew that subsidence, ponding, and gas generation and migration are inherent in the operation of a landfill" was sufficient to establish that the City of San Antonio knew that its operation of the landfill was substantially certain to damage the plaintiffs' property. *Id*. at 821. Specifically, the court observed that there was no evidence that the City knew the plaintiffs' property was being damaged or that damage was a necessary consequence. *Id*. The court held that the governmental entity's awareness of the mere possibility of damage did not constitute evidence of intent. *Id*.

We find *Pollock* to be inapplicable to the case before us. First, *Pollock* is not a recurrent flooding case nor did it expressly address the public use requirement of a takings claim. Second, as correctly noted by Appellees, their allegation is not one of negligence. But rather, Appellees' pleadings alleged that the City's continued operation and maintenance of the Clint Landfill caused the damage to their property, and that the City knew its continued operation of the landfill was substantially certain to damage their property. *See Jennings*, 142 S.W.3d at 314 (stating that "[t]here may well be times when a governmental entity is aware that its action will necessarily cause physical damage to certain private property, and yet determines that the benefit to the public outweighs the harm caused to that property. In such a situation, the property may be 'damaged for public use.'").

Accordingly, we conclude that Appellees' pleadings sufficiently alleged facts to show public use.

### Causation

Third, the City argues the Appellees' pleadings do not allege a proximate cause between the City's intentional conduct and Appellees' injuries. Specifically, the City maintains Appellees do not identify how the operation of the landfill or the deposit of trash resulted in the overflow of the water-retention ponds. Causation is an issue to be considered in a "takings" cause of action. *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 482 (Tex. 2012). The true test is whether the State's intentional acts were the proximate cause of the taking or damaging of such property. *Id*. at 483. Without causation, there can be no "taking." *Tarrant Reg'l Water Dist. v. Gragg*, 43 S.W.3d 609, 615 (Tex.App. – Waco 2001), *aff'd*, 151 S.W.3d at 549.

18

In *Gragg*, the Texas Supreme Court affirmed that the State's construction and operation of a reservoir caused flooding that damaged farmland where construction and operation of a reservoir changed the character of the flooding. *Id*. at 549, 555. Appellees' pleadings alleged that absent the City's continued operation of the landfill, the damages would not have occurred, and that the inevitable flooding would not have occurred absent the City's continued intentional acts. Moreover, as in *Gragg*, Appellees alleged the the City's continued operation and maintenance of the landfill changed the character of the floodwater, causing an increased flow of water across their properties. The water arrived sooner, flowed faster, was longer-lasting, and was infused with trash and toxic waste transforming it into leachate rather than rainwater. Because Appellees alleged facts demonstrating how the City's continued operation and maintenance of the landfill changed the character of the floodwater that damaged their property, and further alleged that absent the City's intentional acts the damages would not have occurred, and that the damages were forseeable to the City, we conclude Appellees' allegations sufficiently pleaded causation. *See Brandywood Hous., Ltd. v. Tex. Dep't. of Transp.*, 74 S.W.3d 421, 426 (Tex.App. – Houston [1st Dist.] 2001, pet. denied) (stating that cause in fact and foreseeability are the components of proximate cause).

### Nuisance and Trespass Claims under Article I, Section 17

Relying on its prior arguments, the City argues that because Appellees' inverse condemnation claims are barred by sovereign immunity so are their claims for trespass and non-negligent nuisance claims. This issue is based on arguments already addressed and decided against the City. Therefore, for the same reasons, we conclude this sub-issue lacks merit.

Taking the allegations in Appellees' petition as true, and construing them in the light

most favorable to the pleader, we conclude Appellees' Eighth Amended Original Petition states a claim for inverse condemnation and thus, affirmatively demonstrates the trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226, 228. Issue One is overruled.

## EXISTENCE OF JURISDICTIONAL FACTS

In Issue Two, the City argues the trial court erred in denying its plea to the jurisdiction because it introduced uncontroverted jurisdictional evidence negating Appellees' alleged jurisdictional facts. Specifically, the City points to the deposition testimony excerpts attached to the supplements to its plea to the jurisdiction. The City argues that the deposition testimony evidence shows that in 2002 and 2004, the City made significant improvements and took remedial steps at the Clint Landfill to increase the retention capacity of the water-retention ponds and reduce the erosion of the landfill's side slopes. The City asserts this evidence negates the Appellees' allegations that: (1) the landfill operated as designed to flood Appellees' properties, (2) the City did not engage in any remedial repairs to prevent future flooding from occurring, (3) the City was substantially certain future flooding would occur, and (4) the City was substantially certain that flooding would occur on Appellees' properties. Because the City engaged in remedial efforts after each flooding, the City contends that the issue is one of the sufficiency of the City's repairs and therefore, Appellees' true claims are for negligence, not inverse condemnation. As such, the City argues Appellees' claims are barred by its governmental immunity from liability.

In response, Appellees note that their Eighth Amended Original Petition does not complain about the City's remediation efforts. Instead, Appellees consider those efforts to be irrelevant to the inevitable and recurrent flooding caused by the City's operation, construction,

20

and maintenance of the landfill.    Appellees argue that the City's evidence does not disprove the existence of jurisdictional facts, but rather creates only a fact issue.

Appellees' allegations are that the City took, damaged, or destroyed their property by the construction, operation, or maintenance of the Clint Landfill which included the act of regularly piling trash and other refuse on the landfill.    Despite the City's knowledge that the landfill's water-retention ponds had overflowed on two prior occasions and flooded nearby properties, the City intentionally chose to continue to operate and maintain the landfill such that the character of the floodwaters was changed by the City's intentional acts.    The City continued to operate and maintain the landfill knowing that its intentional acts were substantially certain to damage Appellees' properties by continuing to flood them during heavy rain events.    The inevitable flooding would not have occurred absent the City's continued intentional acts.    Accordingly, Appellees' allegations do not concern the remedial efforts the City took in 2002 and 2004, or the sufficiency of those efforts.

The evidence the City relies on to argue that it negated the existence of jurisdictional facts showed that in 2002 and 2004, the City took various remediation efforts in response to investigations conducted by the Texas Commission on Environmental Quality (TCEQ) as a result of having received complaints about flooding at the Clint Landfill.[2]    However, as already noted, Appellees' allegations relate to the City's continued operation and maintenance of the landfill which included the landfill's acts of continuing to dump waste and other material on the

---

[2] The City's evidence showed that some of the remedial efforts at the landfill included the excavation and dredging of the retention ponds, the construction of a perimeter berm, the construction of a new temporary containment pond, and the incorporation of temporary design features to mitigate flooding.    To prevent erosion the City also improved the maintenance road, used asphalt millings, sprayed magnesium chloride and installed a drainage pipe to prevent erosion.    Old tires were also installed as velocity inhibitors to address the 2004 violation.

21

landfill such that the character of the floodwater was transformed into leachate rather than rainwater, and that the inevitable flooding and resulting damages to Appellees' properties would not have occurred but for the City's continued operation and maintenance of the landfill. Thus, the evidence of the City's efforts does not challenge the allegations asserted by Appellees, but instead challenges any purported negligence of the City which is not an allegation made by Appellees in this case.

In support of its argument that the City's evidence does not negate the existence of jurisdictional facts, Appellees assert the evidence does not show that the remedial steps were undertaken to prevent future damage to Appellees' properties, that they were sufficient to do so, or that the City ever believed them sufficient to do so. The only evidence concerning the sufficiency of the repairs is contained in the deposition testimony of TCEQ investigator, Karl Rimkus. Rimkus testified that after his investigation in 2002, the concerns he had about the landfill that led to the overtopping of the retention pond was sufficiently remediated. Similarly, Rimkus agreed the City sufficiently remediated the problems at the landfill in 2004. We agree with Appellees that the critical issue is whether the City's continued operation and maintenance of the landfill was substantially certain to damage Appellees' properties. However, the testimony of Rimkus presents a fact issue as to whether the City knew that its construction, operation, and maintenance of the Clint Landfill was substantially certain to damage the Plaintiffs' properties by continuing to flood them during heavy rain events. Because a fact issue exists, we conclude the trial court did not err when it denied the City's plea to the jurisdiction. *Miranda*, 133 S.W.3d at 227-28 (if the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction). Issue Two is overruled.

22

Having overruled the City's first two issues, we need not address its third issue. *See* TEX.R.APP.P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction.


GUADALUPE RIVERA, Justice

March 14, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

23