**CONCUR and Opinion Filed November 2, 2020**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-14-00649-CV**

**B.C., Appellant**

**V.**

**STEAK N SHAKE OPERATIONS, INC., Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-02686-2012**

## CONCURRING OPINION ON DENIAL OF EN BANC RECONSIDERATION

Opinion by Justice Evans

Before the Court is Steak N Shake Operations, Inc.'s (SNS) motion for en banc reconsideration, which the Court denies by separate order. My colleague, Justice Schenck, writes a separate concurrence explaining that in his view of our judicial role it would be proper to do what SNS asserts we did. I write this separate concurrence to explain what I as the author for the panel decision did in regard to analyzing the arguments SNS now asserts in its motion for en banc reconsideration.

Among other arguments in its motion for en banc reconsideration, SNS argues (1) we erred in concluding SNS's no-evidence grounds for summary judgment failed

to challenge Jose Tomas Ventura's status as a vice-principal of SNS, (2) we erred in explaining the law regarding who is a vice-principal beyond the law articulated in the parties' briefs, and (3) we erred in our examination of the summary-judgment record. I will review these arguments in sequence.

## I.

In its motion for en banc reconsideration, SNS contends the following statements in its no-evidence grounds for summary judgment challenged Ventura's vice-principal status:

> To prove a cause of action for assault by infliction of bodily injury, Plaintiff must prove (1) [SNS] acted intentionally, knowingly, or recklessly; (2) [SNS] made contact with the plaintiff's person; and (3) … [SNS]'s contact caused bodily injury to the plaintiff. As to any claim against SNS for direct liability for assault/sexual assault, *there is no evidence of any of these elements*.

(emphasis added). The only elements listed are three of the elements of assault. Neither "vice-principal" nor the elements or standards for vice-principal status are mentioned. So, the only possible referents for SNS's assertion, "there is no evidence of any of these elements," are the three elements of assault that were listed. *See* TEX. R. CIV. P. 166a(i) (challenged elements must be identified); *Jose Fuentes Co., Inc. v. Alfaro*, 418 S.W.3d 280, 283 (Tex. App.—Dallas 2013, pet. denied) (en banc) (no-evidence motion must specify which element or elements are challenged). Therefore, SNS challenged on no-evidence grounds B.C.'s evidence of the assault, not Ventura's status as a vice-principal.

–2–

## II.

In its motion for en banc reconsideration, SNS contends we made legal arguments about vice-principal status not asserted by B.C. In SNS's traditional ground for summary judgment and in its appellate brief, SNS challenged Ventura's vice-principal status by asserting the Supreme Court of Texas had indicated in *Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex. 1996), that the court was considering requiring equity ownership by an agent to be a vice-principal for whose conduct an entity is directly liable. In order to decide whether SNS's argument justified affirming the trial court's grant of summary judgment, we examined opinions explaining what type of agency authority constitutes vice-principal status. We began with the authority the supreme court relied upon in its first opinion in this case—*see B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 281 n.3 (Tex. 2017)—and from there explained other similar supreme court and appellate court opinions. Our research and analysis were necessary to properly analyze SNS's argument. To the extent SNS contends we should have accepted its legal analysis or confined ourselves to authorities the parties cited, SNS is mistaken.

## III.

Finally, in its motion for en banc reconsideration, SNS contends we erred by examining and relying on evidence in the record not specifically pointed out by the parties. To make this argument, SNS argues we should not consider the record SNS brought to the trial court in support of its traditional ground for summary judgment

when analyzing its no-evidence grounds and implies we should not have relied on the record B.C. filed characterizing B.C.'s response as late. We pointed out the supreme court has already rejected both of SNS's arguments in the supreme court's second opinion in this case. *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 261–62 (Tex. 2020) ("We . . . conclude that the trial court's recital that it considered the 'evidence and arguments of counsel,' without any limitation, is an 'affirmative indication' that the trial court considered B.C.'s response and the evidence attached to it. . . . [W]e have no basis to conclude the trial court did not consider all summary-judgment evidence on file at the time the motion was heard," and remanding to this Court to consider all the summary judgment evidence, including B.C.'s response).

SNS also implies we should not have reviewed the context of those parts of the summary judgment record referenced by the parties, inferring that we should have confined ourselves to considering only the parties' summaries of what the referenced record contained. In our opinion, we explained what those portions of the record referenced by the parties contained in their context, at times including more facts from the context of the cited record than what SNS or B.C. summarized in their briefs before us or papers in the trial court. For example, when SNS referred to a page in the record that contained a court reporter's four-to-one pages of transcription of deposition testimony, we examined the context of the statements and the documents on which the deponent was being questioned. In so doing, we merely

–4–

discharged our duty to read and analyze the record in its context to which the parties referred us, instead of merely trusting counsel's persuasive characterizations of the record's content. *See generally Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (describing appellate justice's simple search of summary judgment record to find evidence not specifically cited in briefs).

## IV.

My colleague, Justice Schenck, writes separately to explain why he considers it within our discretion as part of our appellate review of summary judgments to review entire records to find supporting evidence for the issues raised by the parties. That is more expansive review than I understand we conduct on appellate review of a summary judgment. *But see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228, 232 (Tex. 2004) (review of plea to jurisdiction "generally mirrors that of a summary judgment" and "We search the record for evidence [supporting appellants' contention]. The [appellants] fail to point to any evidence, and the record contains no evidence . . . ."). I agree that under some circumstances, we undertake such a record review to evaluate a legal sufficiency challenge to a jury verdict. *See City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 167–68 (Tex. 2004) (when challenging the strength of evidence supporting a verdict as no more than surmise or suspicion, party must "detail the relevant parts of the record," but "[w]hen a complete absence of evidence is alleged, the reviewing court must include the entire record within its scope of review.").

SNS urges a view opposite to Justice Schenck's view. SNS's position is that we should not review summary judgment records at all, we should not observe even the context of the cited evidence, and instead we should only accept the parties' characterizations of the record perhaps checking a record to verify the accuracy of words quoted from part of a sentence taken out of context only to ensure those particular words are, in fact, contained in the referenced record. That is less review of summary judgment records than I understand we should conduct.

So, the record review I conducted was somewhat more than SNS's view and quite a bit less than Justice Schenck's view. And my view of summary-judgment record review requires Texas trial judges, who have no staff attorneys to assist them, to review the parts of the record pointed out by the parties. The contrary views require too much or too little: Justice Schenck's view would require unassisted trial judges to review the entire summary-judgment record in every case, and SNS's view would permit trial judges to ignore the actual record and trust the accuracy of the advocates' persuasive characterizations of its content.

We would certainly comply with whatever record review the supreme court instructs us to conduct. And if the supreme court adopts SNS's extraordinarily limited role of record review, that would dispense with any meaningful judicial review of summary judgment records. But until we receive contrary direction from the supreme court, we should continue to review the context of the record referenced

by the parties, including in our review what the referenced-record contains, not merely the parties' limited or inaccurate summary of the record.


                                  /David Evans/
                                  DAVID EVANS
                                  JUSTICE

140649CF.P05