# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00551-CV

**The City of Austin d/b/a Austin Energy, Appellant**

**v.**

**Liberty Mutual Insurance; Safeco Insurance Company of Indiana; Travelers Casualty Insurance Company of America; Travelers Lloyds of Texas Insurance Company; The Travelers Home and Marine Insurance Company; Travelers Commercial Insurance Company; Daniel and Katherine Sterns, Individually and as Next Friend of [redacted], a Minor; William McCurley; Elizabeth Harpine; and Anne Elise and Michael A. Stock, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-GN-12-003451, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

## O P I N I O N

The City of Austin d/b/a Austin Energy ("the City") appeals the trial court's denial of its Rule 91a motion to dismiss inverse-condemnation claims and common-law tort claims asserted against it by appellees Liberty Mutual Insurance; Safeco Insurance Company of Indiana; Travelers Casualty Insurance Company of America; Travelers Lloyds of Texas Insurance Company; The Travelers Home and Marine Insurance Company; Travelers Commercial Insurance Company (collectively, "the Insurers"); and Daniel and Katherine Sterns, Individually and as Next Friend of [redacted], a Minor; William McCurley; Elizabeth Harpine; and Anne Elise and Michael A. Stock (collectively, "the Homeowners"). *See* Tex. R. Civ. P. 91a (permitting party to move to dismiss cause of action on grounds that it has no basis in law or fact). The trial court found that the Insurers

and the Homeowners had pleaded claims within the court's jurisdiction and denied the City's Rule 91a motion. The City perfected this appeal and in three issues contends the trial court erred in denying its Rule 91a motion because the appellees' pleadings were insufficient to allege a cognizable inverse-condemnation claim, the appellees' common-law tort claims were barred by governmental immunity, and each of the appellees failed to comply with a notice-of-injury requirement contained in the Austin City Charter. The City invoked this Court's jurisdiction over interlocutory appeals from the denial of a challenge to the trial court's subject-matter jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). We will affirm the judgment in part and reverse and dismiss in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellees' claims arise out of a wildfire that started on September 4, 2011, in a vacant lot in western Travis County and spread into the Steiner Ranch neighborhood, causing personal injury and extensive property damage. The Insurers brought their actions as subrogation claims on behalf of a number of their insured property owners. The Homeowners comprise three families bringing claims for uninsured fire losses, including property damage and personal injury. Appellees assert that the City is responsible for the fire, which they allege started when the electric utility's overhead distribution lines came in contact with each other during high winds, causing electrical arcing, which in turn caused "molten metal globules" to fall to the ground and ignite dry vegetation. The fire grew quickly, and wind-borne embers from the fire caused it to cross Highway 620 and spread into the Steiner Ranch neighborhood.

The first petition relating to the fire was filed in November 2012. Thereafter, a number of parties, including the Insurers and the Homeowners, intervened in the suit asserting the

2

same three causes of action: (1) inverse condemnation; (2) negligence; and (3) trespass. Appellees alleged that the presence of excessive slack in the overhead distribution lines was the result of the City's earlier decision, made as a cost-saving measure, to forgo regular inspections of its overhead distribution lines, as well as the City's failure to implement a preventive-maintenance plan but instead adopting a repair-as-needed approach. Appellees alleged that, as a consequence, the extremely high wind conditions that occurred during a time when Central Texas was experiencing a severe drought caused the distribution lines to come into contact with each other, resulting in a wildfire that burned out of control and caused substantial property damage and personal injury.

The City filed a motion to dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure. Entitled "Dismissal of Baseless Causes of Action," Rule 91a allows a party to move to dismiss a cause of action on the ground that it has no basis in law or in fact. *See* Tex. R. Civ. P. 91a. The rule is in addition to, and does not supersede or affect, other procedures that authorize dismissal. *Id.* R. 91a.9. As specified in the rule:

> A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

*Id.* R. 91a.1. A motion to dismiss must identify each cause of action to which it is addressed and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both. *Id.* R. 91a.2. The trial court may not consider evidence in ruling on the motion. *Id.* R. 91a.6.

In its motion, the City asserted that appellees' petitions did not sufficiently allege the "intent" and "public use" elements required for governmental action to qualify as a taking. The City

contended that because appellees failed to plead a valid takings claim, the City retained its governmental immunity. With respect to the tort claims, the City asserted that the activities alleged to have caused harm to appellees were not proprietary functions for which the City could be subject to suit, but instead constituted the governmental activities of "fire protection and control" and "engineering functions," for which it is immune from suit absent a clear and unambiguous legislative waiver of that immunity. The City also argued that appellees' failure to comply with notice provisions contained in the Austin City Charter constituted incurable jurisdictional defects. In essence, the City asserted that appellees failed to allege viable causes of action not barred by governmental immunity and that its immunity deprived the trial court of subject-matter jurisdiction. The trial court denied the City's Rule 91a motion, reciting in its order that appellees had sufficiently stated claims within the court's jurisdiction. The City perfected this appeal.

In the present case, the Rule 91a motion challenged the trial court's subject-matter jurisdiction over the claims asserted; therefore, section 51.014(a)(8) affords the City a right to an interlocutory appeal of the trial court's denial of the motion.

**STANDARD OF REVIEW**

Whether a court has subject-matter jurisdiction over a case is a question of law, which we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).[1]

---

[1] Reciting the language of Rule 91a, the City asserts that this Court "must reverse the trial court's denial of the City's Rule 91a motion if 'the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.'" This Court generally does not have jurisdiction over an appeal from an interlocutory order denying a Rule 91a motion. The only basis for the Court's jurisdiction over this appeal is that here the Rule 91a motion was used to challenge the trial court's subject-matter jurisdiction and therefore effectively constitutes a plea

4

There are two general categories of pleas to the jurisdiction: (1) those that challenge only the pleadings, and (2) those that present evidence to challenge the existence of jurisdictional facts. *Id*. When, as here, a plea to the jurisdiction challenges only the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* Our de novo review of such challenges looks to the pleader's intent and construes the pleadings in its favor. *Id.* If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should generally be given an opportunity to amend. *Id.* at 226-27.

## DISCUSSION

"Sovereign immunity protects the State from lawsuits for money damages." *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Political subdivisions of the state, including cities, are entitled to such immunity—referred to in this context as "governmental immunity"—unless it has been waived by statute or the constitution. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3, 695 (Tex. 2003). Appellees assert that Article I, section 17 of

---

to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (person may appeal from interlocutory order that grants or denies plea to jurisdiction by governmental unit); *Texas Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004) ("The reference to 'plea to the jurisdiction' [in section 51.014(a)(8)] is not to a particular procedural vehicle but to the substance of the issue raised. Thus, an interlocutory appeal may be taken from a refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to the jurisdiction or some other vehicle, such as a motion for summary judgment."). We therefore review the trial court's order using the standard of review for pleas to the jurisdiction that challenge only the pleadings.

the Texas Constitution, known as the "takings clause," waives the City's immunity from their inverse-condemnation claim. *See* Tex. Const. art. I, § 17; *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007) ("Article I, section 17 waives immunity for takings."); *City of New Braunfels v. Carowest Land, Ltd.*, No. 03-11-00699-CV, 2014 WL 1774535, at \*6 (Tex. App.—Austin Apr. 30, 2014, no pet. h.) ("Because this cause of action is created by the Texas Constitution, a valid takings claim is not barred by common-law doctrines of sovereign and governmental immunity." (citing *Holland*, 221 S.W.3d at 643 and *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001)). The City counters that appellees' pleadings failed to assert a valid takings claim, in the absence of which the City retained its immunity from their causes of action for inverse condemnation. *See Little-Tex Insulation Co.*, 39 S.W.3d at 598-99 (immunity retained in absence of properly pleaded takings claim); *Carowest Land, Ltd.*, 2014 WL 1774535, at \*6 (if plaintiff cannot establish viable takings claim against governmental entity, claim would implicate immunity and potentially be barred by it (citing *Texas Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013)).

With respect to their tort claims, appellees assert that the City's conduct forming the basis of those claims was the performance of a proprietary function for which the City is not immune, specifically the operation and maintenance of a public utility. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1) (operation and maintenance of public utility is listed in "proprietary functions, which are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality"); *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) ("A municipality is not immune from suit for torts committed in the performance of its proprietary

6

functions, as it is for torts committed in the performance of its governmental functions.").  But the City maintains that the activities that appellees allege caused damage to their property were part of the City's performance of "fire protection and control" and "engineering functions," governmental activities for which it is immune. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a) (fire protection and control and engineering functions are "governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public").  We must, therefore, review appellees' pleadings to determine whether they allege facts affirmatively demonstrating the court's jurisdiction to hear their inverse-condemnation and tort claims against the City.[2]

### Inverse-Condemnation Claim

In its first issue, the City asserts that the trial court should have dismissed the inverse-condemnation claims for lack of subject-matter jurisdiction because appellees did not sufficiently allege facts establishing that the City acted with the intent required for governmental action to constitute a "taking" under the Texas Constitution.  The City also argued that the pleadings did not allege facts establishing that appellees' property was damaged for a "public use."  *See* Tex. Const. art. I, § 17 ("No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ."); *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 (Tex. 2004) (only intentional act can give rise to taking).

---

[2]  The relevant factual allegations in the Insurers' and the Homeowners' pleadings are virtually identical.

The Insurers and the Homeowners filed claims for inverse condemnation alleging that the City took private property without paying adequate compensation. *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992) (if governmental entities appropriate property without paying adequate compensation, property owner may recover resulting damages through inverse-condemnation claim). The takings clause of the Texas Constitution is a clear and unambiguous waiver of immunity from suit for inverse-condemnation claims. Tex. Const. art. I, § 17.[3] Therefore, governmental immunity does not shield the City from a properly pleaded claim for compensation under the takings clause of the federal or state constitution. *See Holland*, 221 S.W.3d at 643; *Westgate, Ltd.*, 843 S.W.2d at 452. To properly assert an inverse-condemnation claim against a governmental entity, a party must plead that the governmental entity (1) engaged in a specific act that resulted in the taking, damaging, or destroying of private property; (2) engaged in the act intentionally, i.e., either knowing that the specific act was causing identifiable harm or knowing that specific property damage was substantially certain to result; and (3) took the property for a public use. *See Southwestern Bell Tel., L.P. v. Harris Cnty.*, 267 S.W.3d 490, 495 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also City of San Antonio v. Pollock*, 284 S.W.3d 809, 812 (Tex. 2009) (dismissing takings and nuisance claims due to lack of evidence that city knew its actions were substantially certain to cause harm). Negligence that merely contributes to the damage

---

[3] Appellees also alleged a federal takings claim pursuant to the Just Compensation Clause of the Fifth Amendment to the United States Constitution. U.S. Const. amend. V (private property shall not be taken for public use without just compensation). We consider the federal and state takings claims together. *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477 (Tex. 2012), *cert. denied*, 133 S. Ct. 1999 (U.S. 2013) (case law on takings under Texas Constitution is consistent with federal jurisprudence, and analysis for federal and state takings claim is complementary).

to or destruction of property does not constitute a taking. *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997).

We first address the City's contention that the pleadings fail to allege facts meeting the intent requirement for a takings claim. Appellees did not attempt to plead—and do not contend—that the City *desired* that their property be damaged. Rather, they argue that they pleaded an intentional governmental act—the City's adoption of what appellees call a "wait until it breaks" approach rather than having a regular maintenance program—that the City knew was substantially certain to lead to such damage. To sufficiently allege the intent element for a takings claim, it is not enough merely to allege that the *act* causing the damage was intentional. *See Jennings*, 142 S.W.3d at 313. Rather, a party must allege that the governmental entity intended the resulting *damage*, or at least knew that the damage was substantially certain to occur. *See id.* (property is "damaged for public use" when governmental entity is aware that its action will necessarily cause physical damage to certain private property yet determines that benefit to public outweighs harm). For damage to be a "substantially certain" result of conduct requires more than that it was possible, at increased risk, or even more likely than not to occur. *See Pollock*, 284 S.W.3d at 821 ("The governmental entity's awareness of the mere possibility of damage is no evidence of intent."); *Gulf Coast Waste Disposal Auth. v. Four Seasons Equip., Inc.*, 321 S.W.3d 168, 175 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding that "allegations demonstrat[ing] awareness . . . that an increased risk existed" did not satisfy "necessarily incident to or a consequential result of" intent standard in takings case). To have the requisite intent, a governmental entity must have known that the damage complained of was substantially certain to occur as a result of its conduct, meaning that the damage was "necessarily

9

an incident to, or necessarily a consequential result of the [entity's] action." *Pollock*, 284 S.W.3d at 821 (quoting *Jennings*, 142 S.W.3d at 314). Thus, for an act to give rise to a takings claim, the act must at least be one in which the inevitability of damage is so obvious that its incurrence is deemed to be the deliberate infliction of harm *for the purpose of* carrying out the governmental project. *Intentionally* causing the damage clearly falls within this standard; so, too, does acting with knowledge that the damage was *substantially certain* to result from the conduct. *Jennings*, 142 S.W.3d at 314. Appellees' pleadings therefore must allege facts that, taken as true, demonstrate that the City knew that a wildfire that would damage or destroy private property[4] was the "necessary incident" of its conduct, which we understand to mean that it was "almost" certain to occur as the result of the City's decision regarding maintenance of its overhead electric-distribution wires.

Appellees' pleadings alleged the following series of events culminating in the damage to their property: (1) the City affirmatively decided, as a cost-saving measure, to discontinue inspections of its overhead power lines; (2) as a result of this decision, the relevant power lines eventually lost tension, which allowed for excessive slack in one or more of the lines; (3) the power lines became sufficiently slack that, under conditions such as high winds, they could come in contact with each other; (4) circumstances arose, specifically high winds, that did in fact cause the lines to come in contact with each other; (5) the contact of the lines caused electrical arcing that created molten metal globules to form on the lines; (6) the molten metal globules fell from the line onto dry vegetation, which ignited; and (7) the resulting fire was not contained and ultimately caused personal injury and damage to their property.

---

[4] We need not and do not address whether the City would have to have known that damage to *specific identifiable* property was substantially certain to result.

10

For appellees' takings claims to be valid, the damage from the fire had to be the almost-certain result of the City's fiscally driven decision to curtail inspection of its overhead power lines. The City had to know at the time it made the decision that the chain of events outlined above was "substantially certain" to result from that decision. *See Pollock*, 284 S.W.3d at 821 (government's knowledge must be determined as of time it acted, not with benefit of hindsight).

In our view, whether this wildfire was the substantially certain consequence of the City's decision to discontinue power-line inspections is a legal question. We conclude that the facts pleaded by appellees do not reasonably permit a conclusion that the fire and resulting damage were substantially certain to occur. The relevant power lines, even if not inspected, were not "almost certain" to become so slack that they would contact each other in high winds. Even if they became slack enough to allow for contact, it was not "almost certain" that those wires would actually come in contact with each other in high winds. And even if they did come in contact with each other, it was not "almost certain" that such contact would cause electrical arcing sufficient to create molten metal globules that would then fall to the ground. Nor was it almost certain that any molten globules that fell would fall onto vegetation as opposed to a less flammable surface such as a roadway or parking lot or, for that matter, on *green* vegetation after the current drought has ended.

We conclude that the series of events that connects the City's maintenance decision to the property damage, while arguably foreseeable, was not an almost-certain result of or necessarily incident to that decision. At best, appellees' factual allegations would show that the City's conduct furnished a condition that made property damage a substantial risk. That is far different, however, from being the substantial certainty required for a valid takings claim. Toleration of a dangerous

11

condition may or may not set the stage for a subsequent disaster, yet, as discussed above, only if the event causing damage is the substantially certain result of the conduct can the City be charged with the requisite level of intent to constitute a taking. The fact that a disaster happens does not, by virtue of its occurrence, mean that it was a substantial certainty from the outset

Although appellees' pleadings allege that "a wildfire is a substantially certain result" of the City's lack of a maintenance program, this is merely a legal conclusion as opposed to an allegation of facts supporting that conclusion. Such a legal conclusion need not be taken as true in evaluating the sufficiency of the pleadings. *See Gattis v. Duty*, 349 S.W.3d 193, 200 (Tex. App.—Austin 2011, no pet.) (unsupported legal conclusions are insufficient to meet pleader's burden to allege facts affirmatively demonstrating trial court's jurisdiction); *see also City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010) (conclusory pleadings were insufficient to show jurisdictional facts needed to determine if trial court had jurisdiction). Because appellees do not allege facts showing that the fire was substantially certain to occur as a result of the City's maintenance decision, it necessarily follows that the City could not be charged with *knowing* that that decision was substantially certain to cause the fire. We agree with the City that appellees' petitions do not plead facts meeting the intent requirement for a governmental taking and thus do not affirmatively demonstrate the court's jurisdiction over their inverse-condemnation claims.

For similar reasons, appellees' allegations likewise do not support their assertion that the property was damaged *for public use*, another requirement for a valid inverse-condemnation claim. As an initial matter, we observe that when there is no intent or substantial certainty of damage as a result of government conduct, it is difficult to conceive how the property could be said to have

12

been taken or damaged *for public use*. *See Jennings*, 142 S.W.3d at 313-14 (when government did not desire property to be damaged, takings liability arises only if government knows that damage is substantially certain to result). On appeal, the public use asserted by appellees is "power transmission." But appellees do not allege or explain how the damage to their property advanced that purpose. It is self-evident that the fire was not the substantially certain result of the City's mere provision of electric power, nor was it necessary that it occur in order for the City to provide power to its residents. When property damage is an unintended result of the government's act or policy, it cannot be said that the property was "taken or damaged for *public use*." *Id.* at 313 (citing *Texas Highway Dep't v. Weber*, 219 S.W.2d 70, 71 (Tex. 1949), and *Steele v. City of Houston*, 603 S.W.2d 786, 791-92 (Tex. 1980)). Unless it was substantially certain to occur, the fact that some property ultimately suffered harm as a result of the City's power-transmission activities undertaken for the benefit of the public does not mean that the property was damaged *in order to effectuate* that public benefit. *See Weber*, 219 S.W.2d at 71 (property is "damaged for public use" when governmental entity is aware that its actions will necessarily cause physical damage to private property yet determines that benefit to public outweighs harm caused to that property).

Although they do not argue it in their appellate brief, appellees' trial-court pleadings alleged that the City's maintenance decision "reduced the utility's operating budget by eliminating costs" and "this benefit was realized by Austin Energy and the public at large." Thus, appellees appear to have alleged in the trial court that the public use for which their property was damaged was to reduce the City's operating budget and thereby increase the municipality's general fund. The desired cost savings would, however, have been achieved regardless of whether the fire occurred;

13

because the fire was not substantially certain to occur or "necessarily an incident to" the cost savings, we conclude that appellees' property was not damaged "*for* that public use." Appellees' petitions fail to plead facts showing that their property was damaged for public use and have, for this additional reason, failed to affirmatively demonstrate the court's jurisdiction over the inverse-condemnation claims.

Having concluded that the Insurers' and Homeowners' pleadings failed to state valid takings claims, the City retains its immunity from those claims; the trial court therefore lacks subject-matter jurisdiction over them. We sustain the City's first appellate issue.

### *Common-Law Claims*

In its second issue, the City contends the trial court should have granted its Rule 91a motion to dismiss the Insurers' and Homeowners' common-law tort claims for lack of subject-matter jurisdiction because they arise from the City's performance of governmental activities, specifically "fire protection and control" and "engineering functions," as opposed to proprietary functions. Governmental functions are those that a municipality carries out as an arm of the State for the purpose of serving the general public. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a); *City of Houston v. Southwest Concrete Constr., Inc.*, 835 SW.2d 728, 730 (Tex. App.—Houston [14th Dist.] 1992, writ denied). By contrast, proprietary functions are functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality. Tex. Civ. Prac. & Rem. Code § 101.0215(b). Appellees counter that their tort claims arise from the City's operation of a public utility, which is a proprietary function. A city has immunity from suit for torts arising out of its governmental functions but not for torts arising out of its proprietary functions. *Tooke*,

14

197 S.W.3d at 343; *see also City of San Antonio v. BSR Water Co.*, 190 S.W.3d 747, 752-53 (Tex. App.—San Antonio 2005, no pet.) (discussing municipality's governmental functions, for which it is afforded immunity unless waived under Texas Tort Claims Act, and its proprietary functions, for which there is no governmental immunity).

It is well settled that, with respect to tort claims, the operation and maintenance of a public utility is a proprietary function, for which the municipality does not enjoy governmental immunity. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1) (listing "operation and maintenance of a public utility" as proprietary function); *Tooke*, 197 S.W.3d at 343; *San Antonio Indep. Sch. Dist. v. City of San Antonio*, 550 S.W.2d 262, 264 (Tex. 1976) (operation of public utility is proprietary function under common law). The City contends, however, that even though the specific activities forming the basis of appellees' claims were performed in the context of its operation of a public utility, those activities fall within a category of activities deemed "governmental" and therefore are afforded immunity. Civil Practice and Remedies Code section 101.0215 provides, in pertinent part:

> (a) A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:
>
>   (1) police and fire protection and control;
>   . . . .
>   (30) engineering functions;
>
> . . . .
>
> (b) This chapter does not apply to the liability of a municipality for damages arising from its proprietary functions, which are those functions that a

municipality may, in its discretion, perform in the interest of the inhabitants of the municipality, including but not limited to:

> (1)  the operation and maintenance of a public utility;

. . . .

> (c)  The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a).

Tex. Civ. Prac. & Rem. Code § 101.0215.[5]  The City maintains that subsection (c) of section 101.0215 operates to create a type of "safe harbor" that extends immunity to activities that are identified in subsection (a) as "governmental" even though performed in the context of what is plainly a proprietary function as listed in subsection (b).

We first consider whether the activities that form the basis of the appellees' tort claims could be characterized as "fire protection and control."  Appellees alleged that the City breached the applicable standard of care by, among other things, failing to:

- maintain proper tension in the subject electrical lines;

- position the lines with sufficient space between the energized power lines;

- safely, properly, and adequately own, operate, inspect, repair, and maintain its right-of-way equipment;

- adhere to utility line maintenance standards in accordance with recognized and accepted industry standards and practices;

---

[5]  By stating that a municipality is "liable under this chapter," subsection (a) of the statute means that a city may be sued only pursuant to the waiver provisions of the chapter.  By stating that the chapter "does not apply to" liability for damages arising from a city's proprietary functions, subsection (b) recognizes that no waiver of immunity under the Tort Claims Act is necessary for such damages.

16

- take appropriate precautionary safety measures to avoid conditions that could present an unreasonable risk of injury to people and property;

- monitor and inspect its easements and power lines to ensure its electric-distribution system was safe and fit for its intended use;

- test electrical lines to ensure proper tension and confirm that they were safe; and

- recognize possible safety threats, fire hazards, and other dangerous conditions.

In essence, appellees complain that the City negligently performed its obligation to safely operate and maintain its electric-distribution system.

We conclude that the activities complained of do not constitute municipal action carried out as an arm of the State for the purpose of controlling fires or protecting the public from fires. Activities (or, in this case, *non*-activities) that serve only to *create* a fire risk cannot reasonably be considered to constitute "fire protection and control" activities. Appellees allege that the City's operation of the public utility created a greater risk of fire and thus were activities that actually frustrated, rather than served to perform, the governmental function of "fire protection and control." The City counters that the activities complained of are "closely related to" or "associated with" fire protection and control such that it should be considered to have been performing a governmental function. *See, e.g.*, *City of Houston v. Petroleum Traders Corp.*, 261 SW.3d 350, 356-57 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (city's purchase of gas for its police cruisers was undertaken as part of governmental function of affording police protection and therefore was governmental, rather than proprietary, activity). We agree with appellees. The alleged failures by

17

the City to safely operate its public utility do not resemble activities undertaken in pursuit of the governmental function of controlling and protecting against fires.

Nor do we agree that the complained-of activities fall within the "engineering functions" category of governmental functions. The legislature has unequivocally expressed its intent that when a municipality operates and maintains a public utility, it is engaging in a proprietary function. Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1). Appellees' tort claims are based on complaints about the manner in which the City operated and maintained the public utility's overhead electric distribution lines, activities that fall squarely within an enumerated proprietary function. We are unpersuaded by the City's argument that the operation and maintenance of the public utility's power lines are not proprietary functions because they involve the "design and operation of structures, machines, processes, and systems," which the City characterizes as an "engineering function." Virtually every aspect of the operation and maintenance of a public utility involves the design or operation of structures, machines, processes, or systems. Accepting the City's argument would contravene the legislature's classification of a municipality's operation and maintenance of a public utility as a proprietary function, one that it "may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id.* The determination of whether an activity is proprietary or governmental must include consideration of the context within which the conduct occurred. In the present case, the context of the City's activities forming the basis of appellees' claims was the operation and maintenance of a public utility. While operating and maintaining a public utility certainly involves aspects of engineering, we do not believe that it involves the type of "engineering functions" that are "enjoined on a municipality by law and [] given it by the state as part of the

18

state's sovereignty, to be exercised by the municipality in the interest of the general public." *Id.* § 101.0215(a).

Accordingly, because appellees' tort claims arise out of the City's performance of proprietary functions, they are not barred by governmental immunity. *Tooke*, 197 S.W.3d at 343. The City's second issue is overruled.

### *Austin City Charter's Notice Requirement*

In its third issue, the City contends the trial court lacks subject-matter jurisdiction over appellees' common-law claims because none of the appellees complied with certain notice requirements imposed by the Austin City Charter. In support of its argument, the City relies on Government Code section 311.034, which provides that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." *See* Tex. Gov't Code § 311.034. The City's reliance on section 311.034 is misplaced, however, because the notice provision at issue in the present case is contained in the Austin City Charter rather than in a statute and thus is not a *statutory* prerequisite to suit. Moreover, the language of the charter itself does not purport to provide immunity from *suit*. The charter states that "[b]efore the City of Austin shall be *liable for damages*" the injured party must, within 45 days of the event causing the injury or damage, notify the city council or city manager of when, where, and how the damage or injury occurred. It further provides that failure to do so "shall exonerate, excuse and exempt the city from any *liability* whatsoever." *See* Austin City Charter, art. XII, § 3 (emphases added). By its own terms, the notice requirement relates to immunity from *liability*, which only bar's enforcement of a judgment against the City, as opposed to immunity from *suit*, which is a jurisdictional bar against

19

suing the City at all. *See Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). Finally, the notice provision in question does not require that notice be given *before* suit is filed but only that it be given within 45 days of the event causing the injury. Thus, it is not a "prerequisite" to filing a suit against the City. *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012) ("[T]he term 'statutory prerequisite' refers to statutory provisions that are mandatory and must be accomplished prior to filing suit.").

Other than the reference to Government Code section 311.034, the City provides no authority for the proposition that this notice provision is a jurisdictional prerequisite to suit. While the cases cited in the City's brief support the notion that a city may make giving notice of an injury mandatory and a condition precedent to recovering damages against it, none of them states that failure to comply with notice-of-injury requirements such as the one at issue here divests a trial court of subject-matter jurisdiction. *See, e.g.*, *City of Houston v. Torres*, 621 S.W.2d 588, 590 (Tex. 1981) (observing that city's notice-of-claim requirements are mandatory and are condition precedent to maintaining suit for damages against city); *Artco-Bell Corp. v. City of Temple*, 616 S.W.2d 190, 194 (Tex. 1981) (city can legally enact notice requirements pursuant to statutory authority given them by legislature). The City may not, of course, confer governmental immunity on itself through its charter. While failure to comply with the charter's notice requirement might ultimately shield the City from liability, it does not create a jurisdictional bar to appellees' tort claims. We overrule the City's third issue.[6]

---

[6] Because our appellate jurisdiction in this interlocutory appeal is limited to issues of subject-matter jurisdiction, we do not have jurisdiction to consider, and therefore do not address, the parties'

**CONCLUSION**

Having concluded that appellees failed to plead valid takings claims against the City, we reverse the trial court's denial of the City's Rule 91a motion as to the inverse-condemnation claims asserted by the Insurers and the Homeowners. Moreover, based on appellees' current pleadings, we cannot conceive of a set of plausible factual allegations that would demonstrate that the fire and damage were a substantially certain result of the manner in which the City allegedly maintained its overhead distribution lines; appellees have made no suggestion as to how that jurisdictional defect could be cured. Consequently, we do not believe that appellees can cure these pleading insufficiencies by further amendment. *See Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (pleader must be given opportunity to amend in response to plea to jurisdiction only if it is possible to cure pleading defect). Indeed, appellees already had an opportunity to, and did, amend their pleadings in response to the City's original Rule 91a motion. They had a second opportunity to amend their pleadings in response to the City's amended Rule 91a motion but chose not to. Counsel for appellees expressly stated during the hearing on the motion that they were standing on their pleadings. Under these circumstances, we deem it unnecessary to grant appellees a further opportunity to amend. *See Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 686 (Tex. App.—Austin 2004, no pet.) (no obligation to provide further opportunity to amend pleadings when plaintiffs twice amended their petition after plea to jurisdiction

arguments related to the sufficiency of the notice given to the City by the various claimants, nor whether the Austin City Charter's notice requirement violates the Open Courts provision of the Texas Constitution. *See Texas Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727, 730 n.3 (Tex. App.—Austin 1999, no pet.) (in interlocutory appeal from plea to jurisdiction, court considers only jurisdictional arguments).

was filed). Accordingly, we render judgment dismissing appellees' takings claims for lack of subject-matter jurisdiction.

Having further concluded that appellees' common-law tort claims are based on the City's performance of a proprietary function, for which it does not have governmental immunity, and that compliance with the notice-of-injury provision in the Austin City Charter does not implicate the trial court's subject-matter jurisdiction, we affirm the trial court's order to the extent it denies the City's motion to dismiss those claims for lack of subject-matter jurisdiction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed in Part, Reversed and Dismissed for Want of Jurisdiction in Part

Filed: May 16, 2014