

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00119-CV

CITY OF CARROLLTON, TEXAS                                      APPELLANT

V.

MILAN HAMRLA, PETRA                                           APPELLEES
CHUDEJOVA, MICHAEL AND
LAURA BREWER, DALIA
CHAVARRIA, DIANE AND GENE
HINES, AND KEITH EFFERT

----------

### FROM THE 442ND DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. 2012-70581-431

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant City of Carrollton appeals from the trial court's order denying its plea to the jurisdiction that asserted the trial court lacked jurisdiction over

_____

[1]*See* Tex. R. App. P. 47.4.

Appellees Milan Hamrla's, Petra Chudejova's, Michael and Laura Brewer's, Dalia Chavarria's, Diane and Gene Hines's, and Keith Effert's takings claims, negligence claims, and declaratory judgment claims brought against the City. For the reasons set forth below, we hold that the trial court erred by denying the City's plea to the jurisdiction. Accordingly, we will reverse the trial court's order and render judgment granting the City's plea to the jurisdiction and dismissing Appellees' claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellees own homes located in a subdivision in the City; the City approved the plat creating the subdivision in 1986. Appellees' homes front Barclay Drive and back up to a drainage channel known as Dudley Branch. The subdivision developer built a retaining wall along the lots backing up to Dudley Branch. The retaining wall was constructed on Appellees' lots, over an existing City sewer easement. Problems with the retaining wall occurred in 1987, at various times in the 1990s, in 2007, and again in 2009. The City repaired early problems with proceeds from the developer's bond and paid a portion of some subsequent repairs, but declined to repair the 2009 problem.

The 2009 problem was a slope failure that occurred after a night of heavy rain. As water from Appellees' properties flowed to the retaining wall, it stopped at the wall, was absorbed downward, and washed dirt from Appellees' properties out under the retaining wall into the Dudley Branch right of way owned by the

2

City. This slope failure caused the retaining wall to crumble in places, affecting the value of Appellees' properties.

After the City declined to repair the retaining wall following the 2009 slope failure, Appellees filed the instant suit alleging takings claims, negligence claims, and declaratory judgment claims. The City filed a plea to the jurisdiction, arguing that the trial court lacked subject matter jurisdiction because the City possessed governmental immunity. The trial court denied the City's plea to the jurisdiction. This interlocutory appeal ensued.[2]

### III. STANDARD OF REVIEW FOR PLEAS TO THE JURISDICTION

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A plea to the jurisdiction may be utilized to challenge whether the plaintiff has met its burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). We review de novo a trial court's ruling on a plea to the jurisdiction. *Id.* at 228.

When a plea to the jurisdiction challenges the pleadings, we determine whether the plaintiff has met its burden of alleging facts that affirmatively demonstrate that the trial court has subject matter jurisdiction. *City of Keller v. Hall*, 433 S.W.3d 708, 712–13 (Tex. App.—Fort Worth 2014, pet. denied). We

---

[2]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2015); Tex. R. App. P. 28.1(a).

construe the pleadings liberally in favor of the plaintiff, accept all factual allegations as true, and look to the plaintiff's intent. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, our review mirrors that of a traditional summary judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *see also* Tex. R. Civ. P. 166a(c). We take as true all evidence favorable to the plaintiff, and we indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Miranda*, 133 S.W.3d at 228. The defendant carries the initial burden of establishing that the trial court lacks jurisdiction. *Garcia*, 372 S.W.3d at 635. If the defendant meets that burden, the plaintiff must then demonstrate that a disputed material fact exists regarding the jurisdictional issue. *Id.* If a fact issue exists, the trial court should deny the plea. *Id.* But if the evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the plea must be granted as a matter of law. *Id.*

## IV. APPELLEES' TAKINGS CLAIMS

In its first issue, the City argues that the trial court erred by denying its plea to the jurisdiction as to Appellees' takings claims; the City contends that it is entitled to governmental immunity because Appellees have not pleaded valid takings claims.[3]

---

[3]The City also contends that even if Appellees pleaded valid takings claims, the evidence demonstrates that the trial court lacked jurisdiction over

4

## A. The Law

Sovereign immunity protects the State from lawsuits for money damages. *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Political subdivisions of the state, including cities, are entitled to such immunity—referred to as "governmental immunity"—unless it has been waived. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

Governmental immunity is waived for valid takings claims. *El Dorado Land Co. v. City of McKinney*, 395 S.W.3d 798, 801 (Tex. 2013); *City of Dallas v. VRC LLC*, 260 S.W.3d 60, 64 (Tex. App.—Dallas 2008, no pet.). A takings claim is rooted in the takings clause of the Texas Constitution—article I, section 17—which provides, in pertinent part, that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17. When a plaintiff fails to allege a valid takings claim, governmental immunity continues to apply, and a trial court is without subject matter jurisdiction. *Bell v. City of Dallas*, 146 S.W.3d 819, 825 (Tex. App.—Dallas 2004, no pet.); *Dahl ex rel. Dahl v. State*, 92 S.W.3d 856, 862 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

those claims. Because we hold that Appellees have not alleged valid takings claims, we need not address the City's alternative argument that challenges the existence of jurisdictional facts to support those claims. *See* Tex. R. App. P. 47.1.

5

To plead a valid takings claim, a plaintiff must plead that the governmental entity (1) intentionally performed certain acts in the exercise of lawful authority, (2) that such acts resulted in taking, damaging, or destroying the plaintiff's property, and (3) the taking was for public use. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). The intent element is closely tied to the public use element. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 313–14 (Tex. 2004) (discussing link between intent element and public use element); *Harris Cty. Flood Control Dist. v. Kerr*, 445 S.W.3d 242, 254 (Tex. App.—Houston [1st Dist.] 2013) (same), *aff'd*, No. 13-0303, 2015 WL 3641517 (Tex. June 12, 2015). A governmental entity acts intentionally if it (1) knows that the specific act is causing identifiable harm or (2) knows that the specific harm is substantially certain to result from authorized government action—that is, that the harm is necessarily incident to, or necessarily a consequential result of the government's actions. *Jennings*, 142 S.W.3d at 314.

For purposes of pleading the public use element of a takings claim, the property damage must have occurred in order to effectuate a public benefit. *See City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 827 (Tex. App.—Austin 2014, no pet.) ("Unless it was substantially certain to occur, the fact that some property ultimately suffered harm as a result of the City's power-transmission activities undertaken for the benefit of the public does not mean that the property was damaged *in order to effectuate* that public benefit."). When property damage is the unintended result of the government's act, there is no public benefit and it

6

cannot be said that the property was "taken or damaged for *public use*." *Jennings*, 142 S.W.3d at 313; *Liberty Mut. Ins.*, 431 S.W.3d at 827. Mere negligence that eventually contributes to the destruction of property is not a taking. *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997); *City of El Paso v. Ramirez*, 431 S.W.3d 630, 635 (Tex. App.—El Paso 2014, pet. denied).

## B. Application of the Law to the Facts

In its plea to the jurisdiction, the City argued that Appellees did not plead valid takings claims. Appellees explained in their live pleading that at the back of their properties are fences, a retaining wall, and below the retaining wall, a slope down to the creek channel. Appellees claimed that the City took or damaged their properties by causing a slope failure that moved dirt from the Appellees' properties down to the creek channel. Appellees alleged that the City caused the slope failure by (a) failing to enforce ordinances, (b) not building or maintaining the slope from their properties to the creek bed, (c) not fixing erosion in the creek, (d) not keeping water in Barclay Drive (the street that runs in front of Appellees' properties) off their properties, and (e) failing to keep water from Barclay Drive from soaking into the ground when it hit the retaining wall.

While Appellees have made numerous allegations concerning the City's inactions, they have failed to allege that the City intended the slope failure to occur as a result of a specific action or inaction, or that the City was substantially certain that the slope failure would occur at the time that the City failed to take a specific action. *See Jennings*, 142 S.W.3d at 314. Moreover, Appellees have

7

not alleged that the property damage occurred in order to effectuate a public benefit. *See Liberty Mut. Ins.*, 431 S.W.3d at 827 ("Unless it was substantially certain to occur, the fact that some property ultimately suffered harm as a result of the City's power-transmission activities undertaken for the benefit of the public does not mean that the property was damaged *in order to effectuate* that public benefit.").

In *City of Austin v. Liberty Mutual Insurance*, a wildfire allegedly started when the City of Austin's overhead distribution lines came into contact with each other; several homes were destroyed by the fire. 431 S.W.3d at 821. The City of Austin filed a motion to dismiss the homeowner's takings claims, arguing that the homeowners did not sufficiently allege the requisite intent and public use elements. *Id.* at 822. While the homeowner's pleading contained a conclusory allegation that "a wildfire is a substantially certain result" of the City of Austin's lack of a maintenance program, the court of appeals held that the homeowners had not alleged any facts showing that the fire was substantially certain to occur as a result of any specific decision by the City of Austin. *Id.* at 826. Similarly, the court of appeals held that the homeowners did not allege or explain how the damage to their property advanced any public benefit; rather, the fire was simply an "unintended result of the government's act or policy." *Id.* at 826–27.

Like the homeowners in *Liberty Mutual*, here, Appellees have not alleged that the City knew or was substantially certain that the slope failure would occur as a result of a specific action or inaction taken by the City, nor have Appellees

8

alleged that Appellees' property damage occurred in order to advance a public benefit. Even construing Appellees' pleading liberally in their favor, the pleading fails to allege facts constituting a takings claim because Appellees failed to meet their burden of alleging facts that affirmatively demonstrate that the trial court possesses subject matter jurisdiction. *See Bell*, 146 S.W.3d at 825 (holding that the trial court properly granted the City of Dallas's motion to dismiss when the plaintiffs failed to plead a valid takings claim). Accordingly, we sustain the City's first issue.

## V. APPELLEES' NEGLIGENCE CLAIMS

In its second issue, the City argues that the trial court erred by denying its plea to the jurisdiction as to Appellees' negligence claims; the City argues that Appellees failed to raise a fact issue concerning the required causal nexus between the City's use of motor-driven vehicles or motor-driven equipment and their property damage necessary to waive the City's governmental immunity under the Texas Tort Claims Act (TTCA).

### A. The Law

Under the TTCA, governmental immunity is waived for two types of claims: (1) those involving property damage, personal injury, or death arising from an employee's operation or use of a motor-driven vehicle or motor-driven equipment and (2) those involving personal injury or death caused by a condition or use of tangible personal property or real property. Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011).

9

The Texas Supreme Court has "consistently required a nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003). This nexus requires more than the mere involvement of property; rather, the vehicle or equipment's use must have actually caused the injury. *Id.*; *Texas Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001). Thus, the operation or use of a motor-driven vehicle or motor-driven equipment "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Whitley*, 104 S.W.3d at 543 (quoting *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998)). When an alleged cause is "geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible." *City of Dallas v. Hillis*, 308 S.W.3d 526, 532 (Tex. App.—Dallas 2010, pet. denied).

## B. Application of the Law to the Facts

In their live pleading, Appellees alleged that "[a]ll of [the City's] negligent acts involved the use of motor vehicles or motor driven equipment." The City argued in its plea to the jurisdiction that there was not a causal nexus between its use of motor-driven vehicles or motor-driven equipment and Appellees' property damage. In response to the City's plea to the jurisdiction, several of the individual Appellees provided affidavits that stated that "in the years" that they lived on Barclay Drive they saw City employees performing work on Barclay

Drive and Dudley Branch while using motor-driven vehicles and motor-driven equipment. The affidavits also stated that on one occasion the homeowners saw a City truck moving rocks onto Dudley Branch. One of the affidavits also described contractors—whom the homeowner believed to be working for the City—using a bulldozer in 2005 to grade the soil in Dudley Branch and described other occasions in 2010 where a City public works crew graded part of the creek bed using motor-driven equipment. Appellees also produced five pages of the City's "Drainage Work Order Tracking Logs" that reflect that the City performed certain backfill, mulching, and excavation on Dudley Branch in 2010.

While this evidence reflects that the City performed some work on Dudley Branch and Barclay Drive using motor-driven vehicles and motor-driven equipment at various times over the last three decades, it is not evidence that the use of motor-driven vehicles or motor-driven equipment actually caused the slope failure and the resulting damage to Appellees' property. *See Whitley*, 104 S.W.3d at 543; *White*, 46 S.W.3d at 869. Taking as true all evidence favorable to Appellees, and indulging every reasonable inference in their favor, no evidence exists—that is, Appellees failed to demonstrate that a disputed material fact exists—that the City's use of motor-driven vehicles and motor-driven equipment in any way caused the slope failure or Appellees' resulting property damage. *See Whitley*, 104 S.W.3d at 543; *San Antonio Water System v. Overby*, 429 S.W.3d 716, 722–23 (Tex. App—San Antonio 2014, no pet.) (holding that "requisite nexus is not present" in case involving public utility company's use of

11

motor-driven equipment to maintain alley behind plaintiff's property when condition of alley led to property damage).

Because Appellees have not demonstrated that a disputed issue of material fact exists concerning the nexus between their property damage and the City's use of motor-driven-vehicles and motor-driven equipment, we sustain the City's second issue.

## VI. APPELLEES' DECLARATORY JUDGMENT CLAIMS

In its third issue, the City argues that the trial court erred by denying its plea to the jurisdiction on Appellees' declaratory judgment claims; the City argues that because Appellees are not seeking to challenge the validity of any ordinance, statute, or franchise, no waiver of governmental immunity exists.

## A. The Law

The purpose of the Uniform Declaratory Judgments Act (UDJA) is to establish existing "rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 2015). Section 37.004(a) specifically provides as follows:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

*Id.* § 37.004(a) (West 2015). The UDJA is not a grant of jurisdiction; it is a procedural device for deciding cases already within a court's jurisdiction. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996). Consequently, immunity will bar an otherwise proper UDJA claim that has the effect of establishing a right to relief against the State for which the legislature has not waived immunity. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Mustang Special Util. Dist. v. Providence Vill.*, 392 S.W.3d 311, 315 (Tex. App.—Fort Worth 2012, no pet.).

The UDJA thus provides a limited waiver of governmental immunity for only certain declaratory judgment claims that challenge the validity of a statute, ordinance, contract, or franchise. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a); *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 530 (Tex. App.—Austin 2014, no pet.). It is not enough for a litigant to challenge the actions of a governmental entity under a statute, ordinance, contract, or franchise; the validity of the statute, ordinance, contract, or franchise itself must be challenged for governmental immunity to be waived. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) ("But Sefzik is not challenging the validity of a statute; instead, he is challenging TxDOT's actions under it, and he does not direct us to any provision of the UDJA that expressly waives immunity for his claim.").

Absent the limited waiver for claims challenging the validity of a statute, ordinance, contract, or franchise, the UDJA does not extend a trial court's

13

jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change the nature of the underlying suit. *IT-Davy*, 74 S.W.3d at 855. And a plaintiff cannot circumvent governmental immunity by simply characterizing a suit for money damages as a declaratory judgment claim. *Id.* at 856; *Town of Flower Mound v. Rembert Enters., Inc.*, 369 S.W.3d 465, 474 (Tex. App.—Fort Worth 2012, pet. denied).

## B. Application of the Law to the Facts

Appellees seek declarations that (a) the retaining wall is part of the City's infrastructure, (b) the City is responsible for the replacement and repair of the retaining wall, and (c) the City is obligated to comply with certain ordinances, rules, regulations, and standards with regard to slope stability, retaining walls, and drainage.[4] None of the declarations sought by Appellees challenges the validity of a statute, ordinance, contract, or franchise; at most, the declarations

---

[4]In their brief, Appellees make a passing reference to also seeking a declaration that the City's employees failed to perform certain ministerial acts. Because Appellees failed to seek that relief in their live pleading, we do not consider it here. *See Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 871 (Tex. App.—Dallas 2005, no pet.) ("A claim that was not presented to the trial court cannot be considered on appeal."). Moreover, the proper defendant for that type of *ultra vires* claim is the governmental official whose acts or omissions allegedly violated the plaintiff's rights, not the governmental entity itself. *See Sefzik*, 355 S.W.3d at 620 (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009)) ("*Heinrich* held that the proper defendant in an *ultra vires* action is the state official whose acts or omissions allegedly trampled on the plaintiff's rights, not the state agency itself."); *Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.*, 435 S.W.3d 393, 413 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("The proper defendants in an *ultra vires* action are those officials whose acts or omissions allegedly violated the plaintiff's rights.").

sought by Appellees challenge the City's purported actions or inactions under ordinances, rules, regulations, and standards. *See Sefzik*, 355 S.W.3d at 622. Appellees cannot recast the City's purported actions or inactions forming the basis of their takings and negligence claims as actions or inactions that are invalid under ordinances, rules, regulations, or standards and thereby create—by virtue of the UDJA—a right of recovery for which the legislature has not waived immunity. *See Sawyer Trust*, 354 S.W.3d at 388. The UDJA is inapplicable here to waive the City's governmental immunity. *See Sefzik*, 355 S.W.3d at 622.

Appellees acknowledge in their brief that governmental immunity is not waived when a party relies solely on the UDJA to establish jurisdiction. Appellees then argue that they have established jurisdiction independent of their UDJA claims, presumably referring to having established jurisdiction through their takings and negligence claims. As noted above, however, the trial court lacked subject matter jurisdiction over Appellees' takings and negligence claims because the City's governmental immunity is not waived with respect to those claims. Thus, because Appellees have not established that the trial court possessed jurisdiction independent of their UDJA claims and because no waiver exists here under the UDJA, we sustain the City's third issue.

## VII. CONCLUSION

Having sustained the City's three issues, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment granting the City's plea to the jurisdiction and dismissing Appellees' claims.

15

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DAUPHINOT, J., concurs without opinion.

DELIVERED:  January 7, 2016